In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1612

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN L. NORRIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-cr-00170-SEB-KPF-1—**Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 13, 2011—DECIDED MAY 5, 2011

Before RIPPLE, EVANS and SYKES, *Circuit Judges.*

RIPPLE, *Circuit Judge.* John L. Norris was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e). He initially pleaded not guilty to the charge, but, after his motion to suppress evidence was denied, he entered a conditional plea of guilty. Mr. Norris now appeals the district court's ruling on his motion to suppress. Because the officers were acting pursuant to a valid warrant and in a reasonable manner, we affirm the judgment of the district court.

**I**

**BACKGROUND**

**A. Facts**

On October 23, 2007, Officer Dale Young of the Indiana-polis Metropolitan Police Department sought a search warrant for the home of Mr. Norris at 2826 West 10th Street, Indianapolis, Indiana. The warrant was supported by Officer Young's affidavit, which described a series of drug-related activities involving Mr. Norris and taking place at or near his residence. The affidavit recited that a reliable confidential informant had been to Mr. Norris's residence two times in the week prior to October 23; during those visits, the confidential informant both had seen cocaine in Mr. Norris's possession and had been told by Mr. Norris that he had cocaine for sale. Approximately six weeks before October 23, another reliable confidential informant had carried out a controlled purchase of cocaine from Mr. Norris. Officer Young further stated in his affidavit that he personally had conducted surveillance near Mr. Norris's residence during the week prior to October 23 and had observed the following:

> I have observed B/M Johnny Norris, approximately 45 years old, 200lbs. at the residence and interacting through car windows with the occupants and walk up pedestrians in a manner consistent with narcotics trafficking. Specifically, very short conversations, hand to hand exchanges of objects, and constant attempts to observe all directions as these exchanges occur. Other people

> acting as lookouts for 2826 W. 10th St. were walk-
> ing the area attempting to detect police activit[i]es.

R.24, Ex. 1 at 2. A Marion County Superior Court judge signed the warrant. The warrant authorized the search of the residence at 2826 West 10th Street and "the person of a B/M Johnny Norris" for cocaine and other evidence "indicat[ing] a violation or a conspiracy to violate the Indiana Controlled Substances Act." *Id.*

On October 25, a group of ten police officers, including Officer Young, went to the 10th Street residence to execute the warrant. When the officers arrived at the location, Mr. Norris was walking away from his back door. He proceeded down the steps, which were outside the fence that enclosed his backyard and led to the public sidewalk, where two of Mr. Norris's acquaintances were waiting. Mr. Norris never reached the public side-walk, but instead stopped at the last step leading to the sidewalk. At that point, the police exited the van.[1]

It is unclear whether Mr. Norris saw the police first or whether he was alerted to their presence by his female

---

[1] The parties' versions of events differ at this point. The district court credited Officer Young's version of what transpired, and Mr. Norris does not claim that this credibility determination is "completely without foundation." *United States v. Collins*, 604 F.3d 481, 486 (7th Cir. 2010) (quotation marks and citation omitted) (reiterating that, on review of a motion to suppress, we shall not disturb a district court's credibility determinations unless they are "completely without foundation"). Consequently, we employ the facts as testified to by Officer Young and as accepted by the district court.

acquaintance, who said, "Police," when she saw the officers approaching. Regardless of the method by which Mr. Norris learned of the officers' approach, Mr. Norris turned away from the officers, hunched over and placed his hands in front of him near his pockets. As Mr. Norris was beginning to walk back up the steps, the police ordered him to stop; he did not comply. Instead, Mr. Norris proceeded up two steps and threw a crumpled paper bag into the air; the bag landed on the sidewalk.[2] After throwing the bag, Mr. Norris returned his hands to his front waistband area, out of view of the officers. The police again instructed Mr. Norris to stop and to show his hands; when Mr. Norris failed to do so, Officer Young used his taser.

When the taser stopped cycling, Mr. Norris rolled onto his side. He yelled, "Police, police," and attempted to grab the leg of one of the officers who was going past him to enter the house. As Mr. Norris reached for the officer, Officer Young observed a small, silver Derringer pistol on the ground under Mr. Norris.

## B. District Court Proceedings

Mr. Norris was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e). Mr. Norris filed a motion to

---

[2] The discarded bag contained twenty-five individually wrapped bindles of crack cocaine and two packages of marijuana.

suppress evidence and a request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Although the motion maintained that the warrant was "stale" at the time of its execution and was insufficient on its face, the bulk of Mr. Norris's submission was devoted to the argument that "Officer Young intentionally, or with reckless disregard for the truth, included false information and omitted material facts in the affidavit, and that said false information and omitted material facts affected the probable cause determination." R.24 at 3-4.

The district court held a hearing, during which both Officer Young and Mr. Norris testified. At the conclusion of the hearing, the court issued an oral ruling denying the motion. The district court found that, when the police arrived at the residence to execute the search warrant, Mr. Norris was "well outside the house, apparently leaving the house, . . . [and] carrying a bag small enough to be held in one hand in a somewhat crumpled fashion." R.40 at 116. Mr. Norris was heading toward a man and a woman, both standing on the public sidewalk. At that point, the woman recognized the police, and the police ordered everyone "to stop so that the situation could be brought under control." *Id.* at 117.

Although the police were present to execute the warrant, the court determined that "[o]ther facts justified the police encounter to stop and make an investigatory inquiry of the defendant." *Id.* Specifically, Officer Young knew that "the defendant was a prior convicted drug dealer, that he had recently been engaged in drug activity based on the information of confidential infor-

mants and had conducted himself in such a way that was visible to [Officer] Young when [Officer] Young was maintaining surveillance." *Id.* According to the court:

> That suggested that he was conducting drug activity on the side street to his residence as people would come and go. In fact, the defendant himself testified that that was his activity. He said he did it in conjunction with paying off people who helped him, but maybe that was just part of it, because [Officer] Young said that he was conducting himself in such a way that based on his experience and expertise, it clearly suggested that the drug activity was going on between the defendant and passersby on foot and in the cars.
>
> So [Officer] Young had this information when he confronted the defendant.

*Id.* at 117-18. The district court then went on to describe how Mr. Norris, when asked to stop, did not do so (as his confederates apparently did), but turned his back to the police and placed his hands where the police could not see them. After discarding the bag, Mr. Norris ignored another order by the police to stop and show his hands. Officer Young then employed his taser. The court expressed the belief that "the taser was a permissible step." *Id.* at 119. Furthermore, the court determined that the discovery of the gun was caused by Mr. Norris's "crumpl[ing] under the effects of the taser." *Id.* at 120.

The district court then turned to Mr. Norris's legal arguments:

> [T]he defendant's legal theory has moved around a little bit here in terms of asserting a constitutional violation. Clearly started out as an allegation that the search warrant was false and was intentionally false on the basis of which legal permission was obtained to enter the premises. There is no evidence of that.
>
> . . . .
>
> The real issue here is whether the Terry stop that occurred comported with the appropriate legal standards for such an encounter, and the Court finds that those standards have been complied with and that there is no constitutional violation, nor is there any violation of controlling precedent from the Seventh Circuit.

*Id.* at 120-22.

After his motion to suppress was denied, Mr. Norris entered a conditional plea of guilty. Following his sentencing, he timely appealed his conviction.

## II

## DISCUSSION

Mr. Norris does not directly attack the district court's determination that, under *Terry v. Ohio*, 392 U.S. 1 (1968), the police had reasonable suspicion to stop him on

October 25, 2007.[3] Instead, Mr. Norris maintains that, when the police seized him and his weapon,[4] he was within the curtilage of his home. Mr. Norris further contends that the curtilage to one's home is treated as part of the residence for Fourth Amendment purposes. Because reasonable suspicion is not a sufficient basis for the police to invade a person's home, reasonable suspicion also cannot justify the police's seizure of his person, and weapon, within the curtilage of his home.

The Government argues in response that Mr. Norris was outside the curtilage of his home when the officers stopped him. Moreover, the Government continues, the court need not reach the issue of curtilage because, when the police stopped Mr. Norris, they were executing a valid warrant for the search of Mr. Norris's person and residence.[5]

Because we agree with the Government that the officers were acting pursuant to a valid warrant and in a rea-

---

[3] Similarly, he does not argue that any part of the police's response to the situation was disproportionate (i.e., use of the taser).

[4] Mr. Norris admitted at sentencing that the gun was his. R.60 at 20.

[5] The Government also maintains that the seizure of Mr. Norris and his weapon were justified by exigent circumstances and that, even if the search cannot be justified on any of its proffered bases, the evidence still should not be suppressed because the officers acted in good faith. *See United States v. Leon*, 468 U.S. 897, 920 (1984).

sonable manner, we do not need to address the question whether Mr. Norris was within the curtilage of his property when the seizure of his person occurred.

## A. Validity of the Warrant

### 1.

Before the district court, Mr. Norris claimed that the affidavit in support of the warrant was insufficient to "allow a neutral and detached magistrate to conclude that there was probable cause" to search Mr. Norris's residence or his person. R.24 at 3. "Whether a warrant affidavit contains sufficient indicia of probable cause is a legal question that we review de novo." *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006).

In reviewing de novo the issuance of a search warrant based on probable cause, we have stated that

> [a] magistrate's determination of probable cause is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

*United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999)). When, as here, the probable cause determination

is supported by an affidavit that is based on information provided by a confidential informant, we rely primarily on four factors to inform our inquiry:

> (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant.

*United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

Based on these four factors, we cannot find any infirmity in the probable-cause determination. Here, the affidavit was based on information provided by two confidential informants; Officer Young had worked with both previously and found them to be reliable. One confidential informant stated that, in the week prior to the date the search warrant had been executed, he twice had been in Mr. Norris's residence, had seen cocaine in Mr. Norris's possession and had been told by Mr. Norris that the cocaine was for sale. The second confidential informant actually had conducted a controlled purchase of cocaine from Mr. Norris six weeks prior to the execution of the warrant. Finally, Officer Young personally had surveilled Mr. Norris and his home in the week prior to the execution of the search warrant. Officer Young had observed Mr. Norris engaging in actions consistent with the sale of illegal substances, "[s]pecifically, very short conversations, hand to hand exchanges of objects, and constant attempts to observe all directions as these ex-

changes occur[red]." R.24, Ex. 1 at 1. We believe that the affidavit, taken as a whole, established the informants' reliability and contained sufficient timely and detailed information to constitute probable cause that Mr. Norris was engaging in ongoing narcotics trafficking, that he was selling to individuals entering his home and to individuals approaching on the public street, and that, therefore, he likely had cocaine in his home and on his person.

**2.**

Alternatively, Mr. Norris argued before the district court that "Officer Young intentionally, or with reckless disregard for the truth, included false information and omitted material facts in the affidavit, and that said false information and omitted material facts affected the probable cause determination." R.24 at 3-4.

"There is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. In order to overcome this presumption, Mr. Norris must prove, by a preponderance of the evidence, that Officer Young knowingly, intentionally, or with a reckless disregard for the truth, made false statements in the warrant affidavit and that the false statements were necessary for the judicial officer to conclude that probable cause existed. *See United States v. Taylor*, 471 F.3d 832, 838-39 (7th Cir. 2006).

Following an evidentiary hearing, during which both Officer Young and Mr. Norris testified, the district court

concluded that there was no support for Mr. Norris's claim. Indeed, the court concluded that Officer Young reasonably believed the information provided to the state court judge and that there was "no legal or factual basis" for concluding that Officer Young had provided, intentionally or recklessly, false statements to the state court judge to secure the warrant. R.40 at 121.

We review the court's findings of fact for clear error. *United States v. Jones*, 913 F.2d 174, 176 (4th Cir. 1990) (reviewing district court's findings of facts after a *Franks* hearing and stating that "[t]his court must uphold the trial court's findings of fact unless those findings are clearly erroneous"); *cf. Taylor*, 471 F.3d at 839 (reviewing district court's denial of motion to suppress for clear error). Before the district court, Mr. Norris suggested that there were three bases for concluding that Officer Young intentionally or recklessly presented false information in support of the search warrant. We shall examine each.

First, Mr. Norris presented his own affidavit to the district court that recounted facts at odds with the information provided by the confidential informant. Mr. Norris's affidavit stated that, on the dates the confidential informant allegedly visited his home and saw cocaine in his possession, he had not invited anyone into his house and had not represented to anyone that he had cocaine for sale. R.24, Ex. 2 at 1-2.[6] Whether the confidential informant had been in Mr. Norris's home,

---

[6] Mr. Norris affirmed the contents of the affidavit during the hearing.

however, is not the proper inquiry under *Franks*. The Supreme Court has observed that, for a warrant affidavit to be "truthful," it is not necessary that every fact in the affidavit be correct; instead, the affidavit must be "truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165 (internal quotation marks omitted). The relevant inquiry focuses on the officer's belief about the facts recounted, not the validity of the underlying facts themselves. Here, the district court believed that Officer Young testified truthfully when he recounted the events leading up to the securing of the warrant and when he stated that he believed the facts presented to the state court were true. *See* R.40 at 120-21. A trial court's decision to credit the plausible testimony of one witness over another "can virtually never be clear error." *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985) (stating that, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error").

Mr. Norris also claimed that the language that Officer Young used in the supporting affidavit suggested that the affidavit contained intentional or reckless falsehoods. During the hearing, counsel for Mr. Norris established that, in the affidavit, Officer Young had used the term "they" in reference to only one of the confidential informants; Officer Young admitted that it was "an improper

choice of word," but noted that a confidential informant often is referred to in the third person plural. R.40 at 58. Officer Young also admitted that he used the "cut and paste" function on his computer to write certain paragraphs of the affidavit. However, he also testified that "I made sure that the events that I changed were correct and accurate." *Id.* at 61. Again, neither of these actions by Officer Young calls into question the veracity of his representations to the state court. "[M]inor clerical errors generally are not fatal to a search warrant." *United States v. Waker*, 534 F.3d 168, 172 (2d Cir. 2008); *see also United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003) (stating that "[t]he district court correctly concluded that this singular" reference to an incorrect date "was merely a typographical error" and "d[id] not reveal a disregard of the truth").

Finally, Mr. Norris claimed that Officer Young failed to include in the affidavit the amounts of cocaine that the confidential informant observed in Mr. Norris's home. Officer Young acknowledged that the affidavit did not contain specific amounts of cocaine and that the confidential informant saw "less than a couple grams" of cocaine, which could be consistent with personal use. R.40 at 56. A defendant may establish a constitutional violation under *Franks* by showing an intentional or reckless omission of evidence; however, the facts withheld also must be "material" to the probable cause determination. *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010). Here, the exact quantity of drugs was immaterial for two reasons. First, personal possession of cocaine is

a crime; consequently, the fact that the confidential informant observed an amount of cocaine consistent with personal use would not negate probable cause to believe Mr. Norris was violating the law. Second, an affidavit supporting a warrant must be "read as a whole and in a realistic and common sense manner." *United States v. Wiley*, 475 F.3d 908, 915 (7th Cir. 2007) (quoting *Newsom*, 402 F.3d at 782). Other aspects of the affidavit, notably the controlled purchase by the second confidential informant and the surveillance conducted by Officer Young, both strongly suggested that Mr. Norris was in the business of supplying cocaine to other users. Consequently, the omissions by Officer Young were not material to the probable-cause determination.

Under these circumstances, there simply is no basis for second-guessing the district court's credibility determination that Officer Young reasonably believed the information that he provided to the state court judge in support of the warrant. Because there is no evidence in the record to overcome the presumption of regularity accorded to a probable-cause affidavit, Mr. Norris does not have any basis for challenging the sufficiency of the warrant.

## B. Reasonableness of Execution

"[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general Fourth Amendment

protection 'against unreasonable searches and sei-zures.'" *Dalia v. United States*, 441 U.S. 238, 257 (1979) (footnote omitted). Whether the manner of execution is reasonable is a fact-specific inquiry based on the totality of the circumstances facing the officers executing the warrant. *United States v. Banks*, 540 U.S. 31, 35-36 (2003).

Here, we cannot conclude that the officers executed the warrant in an unreasonable manner. First, the officers approached Mr. Norris while he was standing on the steps that led from his yard to the public sidewalk and while he was speaking to two acquaintances. The officers did not need to announce their presence because Mr. Norris's female acquaintance already had done so. Mr. Norris's immediate reaction was to attempt to retreat into his home. Officer Young instructed Mr. Norris to stop. Officer Young's instruction was de-signed to prevent Mr. Norris from entering his home, where he possibly could destroy evidence or could arm himself. If Mr. Norris were permitted to retreat into his home, the police might have faced "[a]n ambush in a confined setting of unknown configuration [which] is more to be feared than it is in open, more familiar sur-roundings." *Maryland v. Buie*, 494 U.S. 325, 333 (1990). Consequently, ordering Mr. Norris to stop was a "reason-able action to secure the premises and to ensure [the officers'] own safety and the efficacy of the search." *Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 614 (2007).

Officer Young's instruction, however, went unheeded. Instead, Mr. Norris proceeded up two steps and threw a crumpled bag (later discovered to contain narcotics)

into the air. After throwing the bag, Mr. Norris placed his hands in front of him, near his waistband area and out of view of the officers. The police again ordered Mr. Norris to stop and to show his hands. Mr. Norris ignored Officer Young's command a second time. At that point, Officer Young employed his taser.

Officer Young's actions were reasonable. Mr. Norris not only exhibited behavior consistent with an intent to discard evidence, he also engaged in actions that suggested he was reaching for a weapon. At this point, Officer Young had every reason to be concerned for his own safety, that of the other officers and that of Mr. Norris's acquaintances. Both the Supreme Court and the courts of appeals have recognized that, in conducting a search, officers may take reasonable steps to minimize the risk of harm to themselves and to others. *See Michigan v. Summers*, 452 U.S. 692, 702-03 (1981); *Bills v. Aseltine*, 958 F.2d 697, 704 (6th Cir. 1992) (stating that "implicit in the authority conferred on police officers by a valid warrant is the authority to secure the premises to be searched in order to minimize the risk of harm to the officers"). Our colleagues in the Eleventh Circuit have held explicitly that an officer's single use of a taser to subdue a suspect, who repeatedly had refused lawful orders of the police, was a "reasonably proportionate" response where failing to use the taser could have resulted in an escalation of violence. *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004). We believe that Officer Young's actions are justified on these grounds. Mr. Norris had displayed an unwillingness to accede to reasonable police commands, and his actions suggested an intent to use violence to fend off further police ac-

tion. Consequently, we agree with the district court that Officer Young's use of his taser was reasonable under the circumstances.

When the taser stopped cycling, Mr. Norris rolled onto his side. At that point, Officer Young observed a small, silver Derringer pistol, visible from under Mr. Norris. Because the weapon was "discovered during a lawful search authorized by a valid warrant" and because the "incriminating" nature of the weapon was "immediately apparent" to Officer Young, Officer Young was justified in seizing the pistol under the plain view doctrine. *See Horton v. California*, 496 U.S. 128, 142 (1990).[7]

---

[7] On appeal, Mr. Norris claims that we cannot affirm the district court's judgment based on the reasonable manner in which the warrant was executed because the district court made a factual finding that the warrant never was executed. *See* Reply Br. 8 (citing R.40 at 117). We disagree that the district court made any factual findings that restrict our affirmance on this basis. The district court determined that the police arrived on the scene with the "actual purpose" of "execut[ing] the search warrant." R.40 at 117. The district court did not believe that it had to analyze the officers' encounter with Mr. Norris as an execution of a search warrant because it also was justified under *Terry v. Ohio*, 392 U.S. 1 (1968). That there is an alternative, legal justification for the officers' actions, however, is not a factual finding, nor does it negate the possibility that the officers' actions may be justified on any number of legal grounds.

## Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED