In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3878

CHRISTOPHER R. PAVEY,

*Plaintiff-Appellant,*

*v.*

PATRICK CONLEY, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:03-CV-662—**Robert L. Miller, Jr.**, *Judge*.

ARGUED AUGUST 2, 2011—DECIDED NOVEMBER 22, 2011

Before WOOD, SYKES, and HAMILTON, *Circuit Judges.*

SYKES, *Circuit Judge.* In this suit under 42 U.S.C. § 1983, Christopher Pavey claims Indiana prison officials violently roused him from his cell and in the process broke his arm. The defendants insist Pavey's suit must be dismissed because he failed to exhaust his administrative remedies for the incident. 42 U.S.C. § 1997e(a). This is the third time the case has been before this court. We first held that the question whether Pavey had exhausted his administrative remedies was clouded by disputed

issues of material fact. *Pavey v. Conley*, 170 F. App'x 4 (7th Cir. 2006). Then we held that those disputed facts ought to be resolved by a judge, not a jury. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). The district court has since conducted an evidentiary hearing, resolved the factual disputes in favor of the defendants and, accordingly, dismissed Pavey's suit for failure to exhaust. The question on appeal is whether those findings are clearly erroneous.

We affirm. Pavey has not convinced us that it was clear error for the district court to disbelieve his account of events. And even if his story should have been credited, his own words belie any suggestion that he exhausted his administrative remedies.

## I. Background

Pavey's left arm was broken when prison officials removed him from his cell in October 2001. Because he writes with his left hand, his injury prevented him from initiating the prison's grievance process, which requires written notification using a specific complaint form detailing his concerns about the incident. Ind. Dep't of Corr. Admin. Procedure No. 00-02-301 ¶¶ I(C), XIV. A prisoner who cannot write, for whatever reason, may ask a prison official or fellow inmate to help him with this task, and the complaint must be submitted within 48 hours. *Id.* ¶ XIV. It is undisputed, though, that Pavey did not submit a complaint about this incident until January 2002, well after the 48-hour deadline. Nor did anyone else submit a complaint on Pavey's behalf.

The question explored at the evidentiary hearing on remand was whether Pavey had been led astray by prison officials who promised assistance but did not follow through. Pavey testified that he was well-acquainted with the prison's grievance process. He had successfully filed at least 10 previous complaints, and in fact he suspected that the violent outburst resulting in his broken arm had been precipitated by a vengeful guard seeking to punish him for initiating a past grievance. Pavey said about 12 hours passed after the incident before he complained to Barbara Nalls, a correctional sergeant. He summoned Sergeant Nalls to his cell around midnight to tell her that what had happened to him "wasn't right" and to suggest that "something should be done about it." Pavey recalled Sergeant Nalls promising to notify Duane Surney, a correctional lieutenant, and explaining that Lieutenant Surney "had previously worked on internal affairs investigation[s] and . . . would know more about how to go about dealing with it." Sergeant Nalls remembered things differently. She testified that she and Pavey engaged in some idle "chitchatting" that evening as she made her rounds. He did complain to her about his broken arm, but she often had these sorts of conversations with Pavey. She explained there was "nothing unusual about it." She was certain she did not tell Pavey that she would put him in touch with Lieutenant Surney.

But Pavey testified that Lieutenant Surney *did* show up at his cell, unannounced, about four hours later. The lieutenant wanted to know everything about the incident, and Pavey was happy to oblige. According to Pavey,

Lieutenant Surney said that "he was going to write up a report and turn it over to" George Payne, the correctional major who was in charge of custody operations. Lieutenant Surney testified that because of the passage of time (this was almost nine years after the events in question), he was unable to recall whether or not he had spoken to Pavey about the incident.

Pavey testified he was called into Major Payne's office for an audience the morning after the incident. He said Major Payne told him that he wanted to "interview" him to get his "side of the story." According to Pavey, Payne took copious notes throughout the 45-minute meeting, and at the end he took photographs of Pavey's injuries with a Polaroid camera. Payne told Pavey "that he was going to write up a report and that he would look into it and keep [Pavey] informed of what was going on." Pavey did not testify consistently about whether he had asked Major Payne to help him fill out a complaint form. At one point Pavey said that he had made this affirmative request and the major had assured him he would "look into" that too. But later Pavey explained that he simply *assumed* the major was going to initiate the grievance process on his behalf. He acknowledged knowing that Major Payne wasn't normally involved in the grievance process, and in fact the major had not mentioned the grievance process at all during their encounter.

For his part, Major Payne testified that he could not remember whether he had met with Pavey. He did say, however, it was his practice to immediately summon the

grievance specialist when an inmate asked for help filling out a complaint form. Payne said he was confident he would have done that if Pavey had asked him for assistance.

Pavey also introduced evidence that prison officials conducted an internal-affairs investigation in response to the incident. The probe uncovered no evidence of staff misconduct. In fact Pavey was disciplined for his role in the altercation.

The magistrate judge concluded that most of Pavey's "testimony was fabricated after the fact in an effort to survive summary judgment." He determined that: (1) the supposed meeting between Pavey and Major Payne never took place; (2) Pavey made up his conversation with Lieutenant Surney; (3) Sergeant Nalls was the only prison official Pavey spoke to about the incident, but he had not asked the sergeant for help filling out a complaint form; instead the two "merely chitchatted about what had happened to him"; (4) the prison conducted an internal-affairs investigation of the incident, but this was entirely distinct from the grievance process; and (5) there was no evidence that Pavey was misled to think that the opening of an internal-affairs investigation satisfied his obligation to initiate the grievance process. The magistrate judge issued a report recommending that Pavey's suit be dismissed for failure to exhaust administrative remedies. The district court adopted the magistrate judge's report over Pavey's objections and dismissed the case.

## II. Discussion

A prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011); *Cruz Berríos v. González-Rosario*, 630 F.3d 7, 11 (1st Cir. 2010); *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010). A remedy is not exhausted if the prisoner has failed to abide by the procedures for pursuing relief. *Woodford v. Ngo*, 548 U.S. 81, 95 (2006); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010); *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009); *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005). The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008); *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008); *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007).

Indiana has designed a comprehensive administrative procedure that implements a grievance process and explains how prisoners may seek this remedy. Ind. Dep't of Corr. Admin. Procedure No. 00-02-301. The prisoner must submit a complaint to the facility's grievance specialist within 48 hours of the incident for which he seeks relief. *Id.* ¶ XIV. The complaint must be submitted in writing using a specific preprinted form. *Id.* ¶¶ I(C), XIV. If the prisoner is unable to write, he may ask a prison official or a fellow inmate to complete the complaint for him. *Id.* ¶ XIV. The grievance specialist is a designated

employee who is "empowered sufficiently to review offender and facility records, interview staff and have adequate access to the facility and resources so that problems can be resolved and/or facts established." *Id.* ¶ VIII.

In the district court proceedings, the question whether Pavey had complied with these procedures turned largely on the issue of his credibility. The magistrate judge thought Pavey had spun a fantastic yarn. The judge found as a factual matter that all Pavey had done was "chitchat" about his injury with Sergeant Nalls; he hadn't spoken about the incident to any other prison official within the 48-hour window, much less requested assistance in initiating the grievance process. We review factual findings and credibility determinations for clear error. FED. R. CIV. P. 52(a)(6); *In re Davis*, 638 F.3d 549, 554 (7th Cir. 2011); *Cavoto v. Hayes*, 634 F.3d 921, 924 (7th Cir. 2011); *Salinger v. Colting*, 607 F.3d 68, 83 (2d Cir. 2010).

Pavey insists that the judge's finding is unwarranted because the defendants presented no evidence to undermine his account of events; instead they testified that they could not remember what had happened. But this assertion is not borne out by the record. To the contrary, Sergeant Nalls, the first prison official Pavey claims to have spoken to about the incident, testified that she *did* remember their conversation but that it did not happen the way Pavey said it did. She was certain that Pavey had just been idly complaining, as usual, and that in any event she did not offer to contact Lieutenant Surney

on his behalf. Pavey does not develop any argument showing the judge clearly erred by crediting Sergeant Nalls's account over his own. And while it is true that neither Lieutenant Surney nor Major Payne could recall much about their interactions with Pavey, there is no reason why the judge *had* to believe Pavey's testimony that each of them had interviewed him about the incident. Pavey insisted that the chain of events was set into motion when he asked Sergeant Nalls to do "something" to redress what had happened to him. Because the judge was permitted to conclude that Pavey had not made this request of Sergeant Nalls, there was no clear error in the judge's finding that none of the subsequent events had happened either. *See, e.g.*, *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."); *United States v. Norris*, 640 F.3d 295, 297 n.1 (7th Cir. 2011) (explaining that a credibility determination may be disturbed only if "completely without foundation").

Pavey's remaining arguments assume the magistrate judge should have credited his testimony. Not only is this assumption wrong, but his contentions are unavailing even if his version of the facts ought to have been believed. He insists that his testimony shows he "literally" complied with the procedures for initiating the prison's grievance process. It does not. It is undisputed

that Pavey did not submit a timely written complaint, and there is no evidence that Pavey asked anyone to help him fill out the proper form. He did not testify that he asked for assistance from Sergeant Nalls or Lieutenant Sarney. His testimony about soliciting assistance from Major Payne was inconsistent. To make sense of Pavey's wavering account, the magistrate judge looked to Major Payne's testimony that he would have immediately summoned the grievance specialist had Pavey requested help—an event that undisputedly did not occur. The judge did not err by refusing to believe that Pavey actually had put the request to the major. Whatever Pavey may have done, he did not "literally" file a complaint or ask for assistance in filling out the form.

Pavey challenges this reasoning, insisting that prisoners need not use "magic words" to exhaust their administrative remedies. Because the prison's administrative procedures are "silent as to what an inmate must do to properly initiate the grievance process when he seeks staff assistance in filing a grievance," Pavey maintains that complaining about the incident to prison officials was enough to alert them to his concerns and to initiate the grievance process. This argument finds no support in either the facts or the caselaw. The administrative procedures are *not* "silent" on this topic; they provide unambiguously that an inmate must file a complaint form with the grievance specialist within 48 hours. If the inmate is unable to write, he may ask for help filling out the form. But he still must file the proper form with the proper person within the proper time. No plausible reading even *hints* that if an inmate cannot

write, he may abandon the requirement of filing a written form with the grievance specialist so long as he has told someone in the prison about his ailments. And Pavey's argument about "magic words" is simply misplaced. When administrative procedures are clearly laid out, as in this case, an inmate must comply with them in order to exhaust his remedies. *Woodford*, 548 U.S. at 95; *Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010); *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 1691 (2011); *Bridges v. Gilbert*, 557 F.3d 541, 555 n.4 (7th Cir. 2009).

Perhaps what Pavey means to say is not that he complied with the procedures for initiating the grievance process, but rather that he accomplished the same objective by participating in an internal-affairs investigation. This argument raises a question this circuit has not addressed. Does participating in an internal-affairs investigation exhaust a prisoner's available administrative remedies under § 1997e(a)? The Sixth Circuit and the Ninth Circuit have held that an internal-affairs investigation is no substitute for an available grievance process. *Panaro v. City of N. Las Vegas*, 432 F.3d 949, 953 (9th Cir. 2005); *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir. 2003), *abrogated on other grounds by Woodford*, 548 U.S. at 87. Their reasoning is persuasive. Section 1997e(a) is concerned with the "remedies" that have been made available to prisoners. An internal-affairs investigation may lead to disciplinary proceedings targeting the wayward employee but ordinarily does not offer a remedy to the prisoner who was on the receiving end of the employee's malfeasance. *Panaro*, 432 F.3d at 953; *Thomas*, 337 F.3d at 734.

And even if the internal-affairs investigation *could* result in some relief for the prisoner, the Supreme Court has rejected any suggestion that prisoners are permitted to pick and choose how to present their concerns to prison officials. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). If a prisoner can be required to submit his grievance in the particular manner and within the precise period of time designated by the prison's administrative procedures, then he must also be required to present his grievance in the proper forum.

But what if prison officials misled Pavey into thinking that by participating in the internal-affairs investigation, he had done all he needed to initiate the grievance process? An administrative remedy is not "available," and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it. *E.g.*, *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010); *Curtis v. Timberlake*, 436 F.3d 709, 712 (7th Cir. 2005); *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002). This is Pavey's final argument: If he did not "literally" file a complaint or ask for assistance in filling out the form, it was only because "he did not think that he had to based on the assurances he received from prison staff, and particularly from [Major Payne], that he had

done all that was necessary to comply with the grievance process." Pavey's testimony does not support this assertion. Every step of the way his own version of events negated any notion that he was given the wrong idea by prison officials. Pavey did not claim that any prison official said *anything at all* to him about the grievance process. Instead, Pavey testified that Sergeant Nalls told him she would refer his concerns to Lieutenant Surney because he "had previously worked on internal affairs investigation[s] and . . . would know more about how to go about dealing with it." Pavey's testimony was that Lieutenant Surney then told him that he was passing the matter on to Major Payne, who Pavey knew wasn't involved in the grievance process. And Pavey conceded that Major Payne didn't mention the grievance process at all during the meeting he claims took place. Finally, Pavey acknowledged that he was quite familiar with the administrative procedures governing the grievance process because he had filed at least ten complaints in the past. So even in Pavey's version of the story, no one gave him a reason to think that the internal-affairs investigation was intertwined with or a substitute for the grievance process, much less that he could initiate the latter by participating in the former. To the contrary, Pavey's own experience offered him plenty of reason to think that this was *not* the case.

AFFIRMED.