AGEE, Circuit Judge,
dissenting:
If a prisoner wishes to bring a suit touching on any aspect of “prison life,” then he must first exhaust his available administrative remedies. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also 42 U.S.C. § 1997e(a). Although all parties agree that Shaidon Blake’s suit concerns prison life, Blake did not avail himself of the very administrative remedy that Maryland designed for this sort of claim — the Administrative Remedy Procedure (“ARP”). Despite that failure, the majority holds that Blake may proceed with his unexhausted claim in federal court. Because that holding undermines the Prison Litigation Reform Act’s (“PLRA”) “mandatory’ exhaustion requirement, Porter, 534 U.S. at 524, 122 S.Ct. 983, I respectfully dissent, preferring instead to affirm the judgment of the district court dismissing Blake’s claim.
I.
Exhaustion is a vital prescription. ‘What this country needs, Congress [has] decided, is fewer and better prisoner suits.” Jones v. Bock, 549 U.S. 199, 203, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Congress designed an “invigorated” exhaustion requirement to- achieve that goal. Porter, 534 U.S. at 524, 122 S.Ct. 983. This requirement is a “strict” one, King v. McCarty, 781 F.3d 889, 893 (7th Cir.2015), compelling a prisoner to use “all available remedies in accordance with the applicable procedural rules,” Moore v. Bennette, 517 F.3d 717, 725 (4th Cir.2008) (citation and internal quotation marks omitted). A prisoner must proceed through the administrative process even if, for instance, he seeks some relief that the process has no power to afford. See Booth v. Churner, 532 U.S. 731, 740-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).
Blake did not exhaust his available administrative remedies before filing suit. As the majority notes, the relevant administrative processes in Maryland are set out in various statutes, regulations, and Department of Public Safety and Correctional Services directives. According to one such directive, DCD 185-002, inmates housed in Division of Correction facilities must seek relief for “institutionally related” complaints through an ARP complaint. J.A. 405. “Every inmate” may submit a request for an administrative remedy. J.A. 406. Consistent with the directive, the prisoner handbook explains that the process applies to “all types of complaints” that might arise within the prisons, save four categories of claims. J.A. 403. All parties agree that those categories do not apply here, as they concern inmate classification, parole, inmate discipline, and withholding of mail. J.A. 405-06. Furthermore, DCD 185-002 separately and *702 specifically instructs prisoners to use the ARP to “seek relief ... for issues that include ... [u]se of force.” J.A. 405. One can hardly imagine a plainer provision that more directly applies to Blake’s present claim.
Blake must have been aware of these remedies — he never even hints that he was not. He received the prisoner handbook in May 2007, along with later “oral' communication” on “the system for processing complaints regarding institutional matters.” J.A. 168, 170. See Wright v. Langford, 562 F. App’x 769, 776 (11th Cir.2014) (holding that it was reasonable to presume prisoner’s awareness of procedures where he received a handbook spelling out those procedures). The same prisoner handbook indicates that full descriptions of the processes were available in the library. J.A. 403. An administrative remedy coordinator was also available to help. J.A. 409.
That is not to say that it would matter whether Blake was ignorant of the procedures. “[An inmatej’s alleged ignorance of the exhaustion requirement, or the fact that he might have misconstrued the language in the handbook, does not excuse his failure to exhaust.” Gonzalez v. Crawford, 419 Fed.Appx. 522, 523 (5th Cir.2011); accord Brock v. Kenton Cnty., Ky., 93 Fed.Appx. 793, 797-98 (6th Cir.2004). After all, we usually do not accept an inmate’s “ignorance of the law” as an excuse for non-compliance in other contexts. United States v. Sosa, 364 F.3d 507, 512 (4th Cir.2004) (equitable tolling). Even só, the point warrants emphasis because it gives Blake even less reason to complain of any unfairness here.
Blake mistakenly maintains that he was precluded from seeking relief through the ARP simply because a separate unit of the Department of Corrections conducted an internal investigation into another officer involved in the incident that led to this suit. Blake did not initiate that investigation himself. See J.A. 287. Nor did he believe that he was entitled to learn the investigation’s results. See J.A. 161. Even so, Blake somehow decided that the investigation and the ARP were effectively one and the same. He never hints that prison officials actively misled him into this understanding. Instead, he came to his conclusion all on his own, having never read the directives explaining the ARP. See J.A. 162-63.
Had Blake read those directives, this case might have proceeded much differently. For nothing in the relevant guidance — in the prisoner handbook, directives, regulations, statutes, or otherwise — suggests that an internal investigation bars or replaces an inmate complaint through the ARP. “[T]he prison’s requirements,” not the prisoner’s unjustified speculations, “define the' boundaries of proper exhaustion.” Jones, 549 U.S. at 218, 127 S.Ct. 910. Because the relevant regulations never mention internal investigations, Blake should not have assumed that such an investigation changed any of the normal rules. Even more so because Maryland instructed inmates to send most “all” of their complaints through the ARP.
Other courts agree that an inmate does not satisfy the PLRA’s exhaustion requirement simply by participating in an internal investigation. See, e.g., Hubbs v. Cnty. of Suffolk, No. 11-CV-6353(JS)(WDW), 2014 WL 2573393, at *5 (E.D.N.Y. June 9, 2014). The Ninth Circuit relied on the “literal command of the PLRA” in doing so. Panaro v. City of N. Las Vegas, 432 F.3d 949, 953 (9th Cir.2005). The Sixth Circuit did much the same. See Thomas v. Woolum, 337 F.3d 720, 734 (6th Cir.2003), abrogated on other grounds by Woodford v. Ngo, 548 U.S. 81, 87, 126 S.Ct. *703 2378, 165 L.Ed.2d 368 (2007). So too did the Seventh Circuit. See Pavey v. Conley, 663 F.3d 899, 905 (7th Cir.2011). These cases and others impliedly recognize that prisoner grievance proceedings and internal investigations serve different and not entirely consistent purposes. Perhaps just as importantly, the cases acknowledge that prisoners are not “permitted to pick and choose how to present their concerns to prison officials.” Id.
In sum, Blake failed to exhaust “available” “administrative remedies” by failing to file a complaint through the ARP. 42 U.S.C. § 1997e(a). The internal investigation made no difference.
II.
Blake’s failure to exhaust also cannot be overlooked merely because he is said to have “reasonably interpreted Maryland’s murky inmate grievance procedures.” Maj. op. at 701. How could Blake have reasonably interpreted procedures that, were available to him but that he never bothered to read?
More to the point, this reasonable-interpretation exception to the PLRA’s exhaustion requirement rests on two unsupportable ideas. First, the prisoner’s subjective beliefs largely do not matter when determining whether the prisoner exhausted his administrative remedies. See Napier v. Laurel Cnty., Ky., 636 F.3d 218, 221 n. 2 (6th Cir.2011); Thomas v. Parker, 609 F.3d 1114, 1119 (10th Cir.2010); Twitty v. McCoskey, 226 Fed.Appx. 594, 596 (7th Cir.2007); Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir.2002) (en banc) (“[Section] 1997e(a) does not permit the court to consider an inmate’s merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are ‘available.’”). Yet the reasonable-interpretation approach makes such belief the lynchpin of the analysis. And second, substantial compliance and proper exhaustion are not the same. See Thomas, 609 F.3d at 1118; Lewis v. Washington, 300 F.3d 829, 834 (7th Cir.2002); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir.2001). Yet the reasonable-exhaustion exception is substantial compliance by another name.
The PLRA’s exhaustion requirement may not even be amenable to any exceptions. The Act requires a prisoner to “us[e] all steps that the agency .holds out[ ] and do[] so properly.” Woodford, 548 U.S. at 90, 126 S.Ct. 2378 (citation and internal quotation marks omitted). That rather restrictive definition of exhaustion seems inconsistent with ad hoc exceptions like one premised on a prisoner’s “reasonable” mistake, where the prisoner has admittedly not used “all steps.”- Judge-made exceptions may be permissible when interpreting judge-made exhaustion doctrines, see, e.g., Reiter v. Cooper, 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), but they hardly seem appropriate where, as here, we are dealing with Congressional text. “Congress is vested with the power to prescribe the basic procedural scheme under which claims may be heard in federal courts,” Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 501, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), and a “court may not disregard these requirements at its discretion,” Hallstrom v. Tillamook Cnty., 493 U.S. 20, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). And pragmatic. reasons suggest that ad hoc, “belief’-focused exceptions should be avoided, as they force courts to undertake the “time-consuming task” of probing “prisoners’ knowledge levels of the grievance process at given points in time.” Graham v. Cnty. of Gloucester, Va., 668 F.Supp.2d 734, 740 (E.D.Va.2009).
A reasonablé-interpretation exception might trace back to administrative law, *704 maj. op. at 698, but that offers a questionable pedigree. “[Ajlthough courts have read the PLRA to call for administrative-law-style exhaustion, they have not imported the corresponding exceptions.” Margo Schlanger, Inmate Litigation, 116 Harv. L.Rev. 1555, 1652 (2003). Certainly at the Supreme-Court level, attempts to engraft exceptions that derive from the “traditional doctrines of administrative exhaustion” onto the PLRA’s statutory exhaustion requirement have failed. Booth, 532 U.S. at 741 n. 6, 121 S.Ct. 1819; see also Woodford, 548 U.S. at 91 n. 2, 126 S.Ct. 2378 (rejecting the dissent’s suggestion to apply an exception to the PLRA exhaustion requirement derived from administrative law). Justice Breyer once suggested a link between administrative law exceptions and the PLRA, see maj. op. at 698, but no majority of justices ever sanctioned that view. Even the Second Circuit, which may have at one time provided perhaps the only precedent supporting a reasonable-interpretation exception, now recognizes that such exceptions may no longer be viable in light of more recent Supreme Court decisions. See Amador v. Andrews, 655 F.3d 89, 102-03 (2d Cif.2011) (questioning whether a reasonable-interpretation exception survives Woodford and citing several other Second Circuit opinions doing the same).
All that aside, Blake does not meet the standards that evidently apply to this new reasonable-interpretation exception. The majority says that the exception will apply when a prisoner’s submissions serve the same “substantive” purposes as proper exhaustion. Maj. op. at 697-98 (emphasis omitted). Furthermore, the prisoner must have been “justified” in believing that he was following the proper procedures. Id. Here, neither proves to be the case.
Blake did not fulfill any of the substantive purposes served by proper exhaustion by involving himself in an internal investigation. That investigation examines employee conduct, not the merits of the inmate’s specific grievance. It also is not a means of dispute resolution or settlement, but instead a simple exercise of the institution’s role as an employer. And the inmate plays a limited role in the investigation, providing only a factual statement. In contrast, exhaustion is intended to “allow[ ] prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.” Jones, 549 U.S. at 204, 127 S.Ct. 910. It also “reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record.” Id. at 219, 127 S.Ct. 910.
The internal investigation here did not fulfill these purposes for several reasons. For one thing, the internal investigation focused on the actions of corrections officer James Madigan, who the Department of Public Safety and Correctional Services identified as the only relevant “suspect.” J.A. 287. It largely did not examine the actions of the only remaining defendant in this appeal, Michael Ross, and did not offer any opportunity to “resolve” a dispute about Ross’ acts. Nor did it produce a useful administrative record, as the internal investigation report largely treats Ross as a peripheral bystander. See J.A. 287-400. Indeed, the few references to Ross largely consist of passing mentions that Blake was “being escorted” by Ross. See, e.g., J.A. 289. Moreover, other evidence that would have been useful in this suit, like a contemporaneous medical examination of Blake, was not gathered during the investigation. Administratively settling Blake’s claims was also out of the question, as the internal investigation did not offer direct relief to an inmate. See *705 Pavey, 663 F.3d at 905 (“An internal-affairs investigation may lead to disciplinary proceedings targeting the wayward employee but ordinarily does not offer a remedy to the prisoner who was on the receiving end of the employee’s malfeasance.”). And, at bottom, it should not be forgotten that Blake failed to file a “targeted complaint,” maj. op. at 699, because he failed to file any complaint. He cannot claim credit for “reporting] the incident,” id., as another corrections officer — Captain James Vincent — did that. See J.A. 157-58, 287, 291. In fact, at one point, Blake actually “requested] that no investigation be conducted ... and that the matter be considered CLOSED.” J.A. 398.
It overstates the facts to say that the internal investigation provided “notice of Blake’s complaint.” Maj. op. at 699. The account that Blake provided as part of the internal investigation focused on Madigan, not Ross. See J.A. 329-33. Thus, Blake did not provide relevant notice of the “source of the perceived problem.” McCollum v. Cal. Dep’t of Corr. & Rehab., 647 F.3d 870, 876 (9th Cir.2011). And prison officials had no notice that Blake would file a suit premised on anything Ross did, as Blake disclaimed any intent to sue anyone. See J.A. 332-33 (“I will not be going any further with this situation outside this institution.”). In any event, affording “notice” would not be enough. “[Njotice to those who might later be sued ... has not been thought to be one of the leading purposes of the exhaustion requirement.” Jones, 549 U.S. at 219, 127 S.Ct. 910. Here again, even the Second Circuit recognizes as much. See Macias v. Zenk, 495 F.3d 37, 44 (2d Cir.2007) (“[A]fter Woodford, notice alone is insufficient!.]”).
Nor did Blake satisfy the “procedural prong” of the exception, which apparently requires the inmate to rely on a “reasonable” “interpretation of the relevant regulations.” Maj. op. at 699. It hardly bears repeating that the regulations were clear and Blake had no basis to misconstrue them. This case did not involve inmate discipline, parole, mail, or inmate classification, so Blake’s claim was not explicitly excluded from the ARP. Contrast with Giano v. Goord, 380 F.3d 670, 679 (2d Cir.2004) (applying the reasonable-interpretation exception where the inmate mistakenly but reasonably believed that his claim fell into a category of claims explicitly excluded from the ordinary grievance process). The ARP applied to all inmates, to all claims of use of force, at all relevant times. Blake acted unreasonably in purportedly interpreting the regulations otherwise. Indeed, at least toward the beginning of this case, even Blake seemed to understand that the internal investigation and the ARP were separate. He explained then that, in his view, the internal investigation made it unnecessary to resort to the ARP. See J.A. 162-63. But he never once suggested that the investigation precluded him from filing a complaint.
Furthermore, the relevant procedures were not “ambiguous” merely because they did not specifically describe how an internal investigation might affect a complaint lodged through the ARP. See maj. op. at 699. When a policy like the ARP ostensibly reaches “all” complaints, and that same policy says nothing about an entirely separate process, the obvious inference is that the latter process is untethered from the former. But the majority puts aside this clear assumption in favor of an ambiguous approach to prison regulation. Now, jail officials must anticipate every potential misunderstanding that an inmate might have about a prison’s administrative remedies and then foreclose every imaginable misunderstanding in writing. That approach imposes a substantial new burden on state corrections officials. It also finds no support in the law. To the *706 contrary, more than one court has held that prison officials are not responsible for telling prisoners anything about the available administrative remedies. See, e.g., Yousef v. Reno, 254 F.3d 1214, 1221 (10th Cir.2001); cf. Johnson v. Dist. of Columbia, 869 F.Supp.2d 34, 41 (D.D.C.2012) (“[T]he majority of courts ... have held that an inmate’s subjective lack of information about his administrative remedies does not excuse a failure to exhaust.”). In addition, prison administrators might now feel compelled to adopt overly complicated administrative procedures out of a justifiable fear that any regulatory silence will be used against them. That could in turn produce even more confusion among prisoners.
Prior district court cases also do not render Blake’s supposed misunderstanding “reasonable.” Maj. op. at 700 n.8. Certainly Blake did not rely on these opinions directly. He could not have, as the opinions do not interpret the policies that applied to Blake’s present claim. Rather, all of those cases were looking to a new department directive that went into effect on August 27, 2008, long after the time when Blake needed to file his administrative complaint. See Williams v. Shearin, No. L-10-1479, 2010 WL 5137820, at *2 & n. 2 (D.Md. Dec. 10, 2010) (addressing events arising in December 2009); Bogues v. McAlpine, No. CCB-11-463, 2011 WL 5974634, at *4 (D.Md. Nov. 28, 2011) (citing “Ex. 4,” an administrative decision that dismissed the inmate’s complaint under the 2008 directive); Thomas v. Bell, No. AW-08-2156, 2010 WL 2779308, at *4 n. 2 (D.Md. July 7, 2010) (citing an exhibit in another case that proves to be an administrative decision dismissing a complaint under the 2008 policy). The 2008 directive provides that a complaint submitted through the ARP must be dismissed when “the basis of the complaint is the same basis of an investigation under the Internal Investigative Unit.” J.A. 437. Of course, the procedure before us here says no such thing, so these district court cases are irrelevant.
In short, a reasonable-interpretation exception does not excuse Blake’s failure to exhaust. The district court appropriately declined to apply that kind of an exception here.
III.
One last matter may be easily resolved: Ross did not waive his exhaustion defense by waiting to raise it. Because PLRA exhaustion is an affirmative defense, Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir.2005), it may be waived by a defendant who fails to timely assert it, see, e.g., Ga. Pac. Consumer Prods., LP v. Von Drehle Corp., 710 F.3d 527, 533 (4th Cir.2013). Here, Ross did not include the exhaustion defense in his initial answer. But he did seek and obtain consent from Blake (through counsel) to file an amended answer containing the affirmative defense. Blake did not condition his consent in any relevant way or even ask to review the proposed answer before it was filed. He cannot now complain about untimeliness when he blindly approved the untimely filing. See Corwin v. Marney, Orton Inv., 843 F.2d 194, 199 (5th Cir.1988); cf. Mooney v. City of N.Y., 219 F.3d 123, 127 n. 2 (2d Cir.2000) (holding that the plaintiffs implied consent to an amended answer excused the defendant’s initial failure to raise an affirmative defense in its answer). The time to object was before the amendment was made. Having failed to do so, Blake was required to face up to Ross’ defense on its merits.
IV.
For these many reasons, we should affirm the district court’s judgment. Mary *707 land’s ARP was available to Blake and he did not use it. We should not now allow his unexhausted claim to go forward. I respectfully dissent from the majority’s choice to do otherwise.