# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-1239

JAMES CURTIS,

*Plaintiff-Appellant,*

*v.*

PERCY TIMBERLAKE
and CHARLES JEFFERSON,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 4739—**Arlander Keys**, *Magistrate Judge.*

———————

SUBMITTED SEPTEMBER 22, 2005[Œ]—DECIDED OCTOBER 6, 2005
PUBLISHED JANUARY 27, 2006[ŒŒ]

———————

Before COFFEY, ROVNER, and WOOD, *Circuit Judges.*

PER CURIAM. James Curtis brought suit under 42 U.S.C.
§ 1983 claiming as relevant here that guards Percy

———————

[Œ] After an examination of the briefs and the record, we have
concluded that oral argument is unnecessary. Thus, the appeal is
submitted on the briefs and the record. *See* Fed. R. App. P.
34(a)(2).

[ŒŒ] This opinion was originally issued as an unpublished order on
October 6, 2005. Upon request, the panel has determined that this
decision should now issue as a published opinion.

Timberlake and Charles Jefferson violated his right to due process by assaulting him without provocation while he was a pretrial detainee at the Cook County jail in Chicago. A magistrate judge, presiding by consent, granted summary judgment for the guards, reasoning that Curtis filed his complaint without first exhausting his administrative remedies as required by 42 U.S.C. § 1997e(a). We vacate and remand.

Curtis alleged in his complaint that Timberlake and Jefferson mistakenly concluded that he tried to take extra T-shirts from the jail's clothing desk, and so they hit him several times and threw him against a wall. Curtis added that he gave a grievance to a jail social worker the next day but never received a response to the grievance or to any of the inquiries he made over the next several months. The two guards filed separate answers denying that they beat Curtis, and both responded at the time that they did not know whether Curtis filed a grievance.

Several months later Timberlake and Jefferson moved for summary judgment on the sole basis that Curtis failed to exhaust his administrative remedies as required by § 1997e(a). The defendants pointed to Curtis's deposition testimony that he hand-delivered his grievance to Sister Rosemary Dowd, the social worker assigned to his housing unit at the time of the alleged assault, rather than depositing it in a lockbox provided for that purpose. In their motion the defendants cited section III.B.2 of the Detainee Grievance Procedures providing that grievances "will be placed in the designated locked box" for collection by the social worker. The defendants also submitted Sister Dowd's affidavit testimony that she could not find a record of this particular grievance and did not recall receiving it. She added, however, that she had "received several request slips and grievances" from Curtis "on previous occasions," and that if Curtis had given her a grievance after this incident, she would have followed her

standard practice of noting it in a master tracking log, assigning a control number, and returning a copy with the control number to Curtis. Moreover, Sister Dowd did not deny that she would accept hand-delivered grievances from inmates rather than insisting on use of the lockbox. In his verified response, Curtis insisted that he wrote a grievance and gave it to Sister Dowd in a sealed envelope, and that the procedure for use of the lockbox "did not limit social workers from accepting grievances by hand." The magistrate judge, although assuming that the question of whether Curtis in fact gave a grievance to Sister Dowd was disputed, reasoned that summary judgment for the guards was nonetheless warranted because Curtis admittedly failed to use the designated lockbox. The court did not address Curtis's contention that use of the lockbox had become optional, reasoning that his own evidence contradicted his position.

On appeal Curtis makes two arguments. First he contends that the magistrate judge erred in granting summary judgment because the guards failed to assert lack of exhaustion in their answers and therefore waived this affirmative defense. We disagree. Noncompliance with § 1997e(a) is an affirmative defense, *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Massey v. Helman*, 196 F.3d 727, 734-35 (7th Cir. 1999), and Curtis is correct that Fed. R. Civ. P. 8(c) requires affirmative defenses to be raised in the pleadings. Nonetheless, we have held that a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result. *Williams v. Lampe*, 399 F.3d 867, 870-71 (7th Cir. 2005) (per curiam); *Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003). Curtis was not prejudiced; he was aware of the exhaustion issue even when he filed his complaint, and he confronted the defense in responding to the motion for summary judgment. Accordingly, there was no abuse of discretion in permitting the defense to be raised at summary judgment.

Curtis also contends that whether he exhausted his administrative remedies is a question that turns on disputed issues of material fact. According to Curtis, the evidence at summary judgment supports a finding that the written procedures providing for use of a lockbox are not exclusive, and that handing grievances to a social worker is also an accepted means of submitting a grievance. The defendants do not directly confront this contention; rather, they simply insist that at summary judgment Curtis admitted that he failed to submit his grievance in the prescribed "place and manner" because he did not use the lockbox. According to the defendants, "Curtis merely alleged that Sister Dowd often accepted improper grievances."

We review the application of § 1997e(a) *de novo. Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). In *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), we held that "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Accord Brengettcy*, 423 F.3d at 682; *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005). We have also emphasized, however, that failure to exhaust is an affirmative defense that a defendant must establish by competent evidence. *Brengettcy*, 423 F.3d at 682; *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (per curiam). And in this case we agree with Curtis that whether he submitted a grievance "in the place" required by "administrative rules" is a disputed issue of fact.

The defendants tell us that Curtis only "alleged" that Sister Dowd "often accepted improper grievances," but this contention misstates both Curtis's position and the defendants' own evidence. Curtis averred that he hand-delivered his grievance to Sister Dowd, and that the written procedures do not "limit social workers from accepting grievances by hand." The defendants, not Curtis, characterize as "improper" the practice of social workers personally accepting inmate grievances, but they point to no evidence

supporting this view. Neither Sister Dowd, a 25-year employee of the jail, nor any other witness at summary judgment disputed Curtis's testimony that hand-delivery was an acceptable alternative to the lockbox. Neither did the defendants offer any evidence that the practice of social workers collecting grievances in person, even if not consistent with the letter of the written policy, was forbidden, "improper," or even discouraged. Indeed, Sister Dowd's testimony that she "received several . . . grievances from Curtis" before the incident in question, and that she would have processed this one if she had received it, supports Curtis's contention that an alternate filing procedure exists. That an informal practice might have developed would not be surprising given that the written procedures specify that the social worker is the one who retrieves grievances from the lockbox.

What the defendants really contend, then, is that, no matter what the facts may show as to accepted practice, an inmate will have failed to exhaust as a matter of law any time prison officials decide to assert noncompliance with a written grievance procedure that effectively has been modified with staff acquiescence or participation. In the view of the defendants, moreover, it makes no difference whether prison officials encourage, or even invite, noncompliance with written procedure. *Pozo* does not support this result. That case holds that the rules governing administrative exhaustion under § 1997e(a) "come from the prison grievance systems themselves," *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002), but we did not define the "administrative rules" that a prisoner must follow, *see Pozo*, 286 F.3d at 1025, as those reduced to *writing* whether or not followed in practice. Other courts have specifically rejected arguments similar to the one presented by the defendants. *See, e.g.*, *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (holding that when prison officials told prisoner that grievance procedures were different than official proce-

dures, prisoner was not required to follow written procedures)*; see also Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) (stating that information provided to prisoner concerning operation of grievance procedures was relevant in deciding whether available remedies had been exhausted).

The defendants did not provide sufficient evidence to establish the absence of a material dispute concerning Curtis's method of filing a grievance at the jail. That question remains to be decided, as does the question whether Curtis in fact hand-delivered the grievance to Sister Dowd as he maintains. As such, material issues of fact still remain. We therefore VACATE the grant of summary judgment and REMAND for further proceedings.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*