**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 1, 2006[*]
Decided March 3, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

No. 05-2004

| | |
|---|---|
| CHRISTOPHER R. PAVEY, <br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
|     v. | |
| | No. 03 C 662 |
| P. CONLEY, R. WATTS, GROTT, et al., <br>     *Defendants-Appellees*. | Robert L. Miller, Jr., <br> *Chief Judge*. |

**O R D E R**

Indiana inmate Christopher Pavey brought suit under 42 U.S.C. § 1983. He claimed that six guards used excessive force in violation of the Eighth Amendment when they broke his arm during a cell extraction. The district court granted summary judgment for the guards on the ground that Mr. Pavey had failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). For the

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

reasons set forth in this order, we vacate the judgment of the district court and remand for further proceedings.

Mr. Pavey alleges that six guards at the Maximum Control Facility ("MCF") in Westville, Indiana, broke his arm on October 14, 2001. Mr. Pavey outlined the facts surrounding the incident in his form complaint and attached a "Notice of Tort Claim." *See* R.3. He verified both documents. According to Mr. Pavey, after he argued with Sergeant Conley about recreation and shower privileges, Sergeant Conley summoned a cell extraction team. At approximately 10:00 a.m., five guards in riot gear responded and entered Mr. Pavey's cell along with Sergeant Conley and two other guards designated to observe and videotape the procedure. Mr. Pavey further alleges that once inside, Sergeant Conley and the members of the extraction team beat Mr. Pavey and broke his left arm twice. The nursing staff bandaged Mr. Pavey's arm and gave him pain killers immediately following the altercation, but not until 4:00 a.m. the next morning did prison staff respond to Mr. Pavey's repeated requests to see a lieutenant or captain. When a lieutenant finally arrived, Mr. Pavey "informed him of the situation" and was told that the lieutenant "would check into it." R.3, Attachment at 11. Five hours later, at approximately 9:00 a.m., Mr. Pavey was transported to another prison where his arm was x-rayed and put in a cast. When he returned to MCF later that day, a major and another lieutenant interviewed him "about the events of the previous day" and photographed his injuries. *Id.* He was then returned to his cell and left there until October 19 when he was transported to a hospital in Indianapolis for surgery. His arm was repaired surgically with a metal plate and six screws. On October 24, he was transferred to Pendleton Correctional Facility. Mr. Pavey says he filed a grievance at Pendleton on January 15, 2002, "when he was able" to write again, but was told that his grievance was too late because it should have been filed at MCF. R.3 at 4.

Mr. Pavey named as defendants a number of MCF employees, including Sergeant Conley and the five members of the extraction team. He claimed that Sergeant Conley and the extraction team used excessive force and that MCF medical staff were deliberately indifferent by failing to treat properly his arm for five days after the break. He also claimed that the beating was retaliation for filing previous grievances and that his due process rights were violated because the guards tasked with observing the cell extraction did not videotape or otherwise document what happened.

At initial screening under 28 U.S.C. § 1915A(a), the district court allowed Mr. Pavey's excessive-force claim to go forward against Sergeant Conley and the members of the extraction team, but dismissed all other claims and defendants. The court reasoned that none of Mr. Pavey's other theories stated a claim for relief. *See* 28 U.S.C. 1915A(b)(1).

Four of the remaining defendants (it appears that the other two never were served properly) later moved for summary judgment on the sole basis that Mr. Pavey had failed to exhaust his administrative remedies as required by § 1997e(a). In support of this argument, the defendants submitted the declaration of an administrative assistant to the MCF grievance officer. The administrative assistant explains in her declaration that inmates generally have 48 hours (excluding weekends and holidays) to submit a grievance. She also states that, if Mr. Pavey had submitted a grievance about the cell extraction, copies would have been in both the grievance officer's file and in his institutional file; she found no relevant grievance in either location, and thus she concluded that none had been submitted at MCF. Finally, she says, "at the least an investigation would have been conducted" had Mr. Pavey submitted a grievance. R.31, Attachment 1 (Declaration of Pam Bane) at 3 ¶ 17.

In response, Mr. Pavey argued that he had exhausted the administrative remedies available to him. He maintained that he could not submit a written grievance until January 15, 2002, because he is left-handed and was unable to write with his injured arm. He filed a grievance at Pendleton, he said, as soon as he was able to write again. Moreover, Mr. Pavey explained, he verbally complained, which led to an investigation the day after the incident during which the major and lieutenant interviewed him and took photographs of his injuries. Mr. Pavey noted that he served the defendants with a discovery demand for their records of this investigation but was thwarted when the district court granted the defendants' motion to stay discovery pending resolution of their motion for summary judgement.[1]

The defendants replied to Mr. Pavey's response, attaching the declaration of the MCF grievance officer. She asserts in her declaration that Mr. Pavey's broken arm would not have prevented him from filing a timely grievance at MCF. This is so, according to the grievance officer, because Procedure 00-02-301, section XIV, of the Indiana Department of Correction Administrative Procedures permits inmates to obtain assistance in writing complaints from other inmates or staff members. That provision states:

> The complaint must be submitted by the offender on his/her own
> behalf. One offender may not submit a complaint on behalf of another

---

[1] Two days before the deadline for the defendants to respond to Mr. Pavey's document request, they moved to stay discovery pending a decision on their motion for summary judgment. The district court granted the requested stay, reasoning that none of the documents Mr. Pavey sought in discovery were relevant to whether he had exhausted his administrative remedies.

offender nor are "class action" complaints acceptable.  However, staff
or another offender may assist an offender who cannot write a
complaint/grievance/appeal him/herself by writing the
complaint/grievance/appeal for the offender.  The complaint shall
explain how the situation or incident affects the offender personally.

That same section also states:  "All complaints, grievances and appeals shall be
signed and dated by the offender.  Signatures may be waived when the offender has
transferred, does not know how to write, or is physically unable to write either by
restraint or infirmity (disability)."  In addition to arguing that Mr. Pavey's broken
arm did not render the grievance process unavailable, the defendants also attacked
Mr. Pavey's assertion that he satisfactorily grieved the cell extraction because his
verbal complaints led to an investigation.  The defendants argued that even if Mr.
Pavey "gain[ed] the attention of people who would have reviewed a grievance if he'd
grieved, and [got] a result similar to what he feels he might have gotten if he
grieved," the exhaustion requirement demanded that he specifically follow the
grievance procedures in place at MCF, which meant filing a written grievance.  R.41
at 5.  The defendants said nothing about the alleged investigation; they neither
denied that it took place or explained what may have prompted prison officials to
question Mr. Pavey.

The district court granted summary judgment in favor of all six guards.
Although "[t]aking as true all of the facts given" by Mr. Pavey, the court accepted
the defendants' reasoning and held that Mr. Pavey had failed to exhaust the
grievance process and that his inability to write did not excuse that omission.  R.42
at 5.  Mr. Pavey challenges only this ruling on appeal and does not contest the
§ 1915A dismissal of his other claims.  He essentially restates his position at
summary judgment:  He could not write because of his broken arm, so he grieved to
"anyone who would listen" and wrote a complaint as soon as he could in January
2002.[2]  Appellant's Br. at 5.

---

[2]  Because in his brief Mr. Pavey discusses only the dismissal of his excessive-
force claim, he has waived any contention that the district court erred in holding
that his complaint does not also state claims for retaliation, for a denial of due
process in connection with the failure to videotape adequately and document the
cell extraction, and for deliberate indifference to the injuries he sustained.
*See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.,* 167
F.3d 1170, 1173 (7th Cir. 1999) (arguments not raised in opening brief are waived);
*Provident Sav. Bank v. Popovich,* 71 F.3d 696, 699-700 (7th Cir. 1995) (pro se
appellants are subject to the same waiver rules as represented parties).
Accordingly, we have no occasion to assess the propriety of the district court's
(continued...)

We review the application of § 1997e(a) de novo. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). We have held that "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002). Lack of exhaustion, however, is an affirmative defense that a defendant has the burden of proving. *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (per curiam). And where the record establishes disputed issues of fact on the question, that burden has not been met. *See Curtis v. Timberlake*, No. 05-1239, 2005 WL 3728794, at *2 (7th Cir. Jan. 27, 2006); *Dale*, 376 F.3d at 656. We conclude that this is such a case.

Like the district court, we accept Mr. Pavey's declarations as true at this stage of the case. Mr. Pavey's evidence establishes that, within 48 hours of his injury, he verbally complained, first to a lieutenant who promised to investigate, and second to a major and another lieutenant who summoned Mr. Pavey, questioned him about the episode and photographed his injuries. The grievance procedure cited by the defendants specifically allows inmates who cannot write to get another inmate *or* a staff member to assist them in preparing grievances. The procedure does not require that the inmate sign his grievance. Therefore, if the major or the lieutenants memorialized Mr. Pavey's complaint in writing and passed it along for investigation, Mr. Pavey may well have done all that literally was necessary to comply with the grievance procedure.

The defendants never have denied that the incident was investigated, and at summary judgment they remained silent as to what transpired during the investigation and what prompted it. Neither have the defendants ever asserted—and certainly they offered no evidence—that Mr. Pavey's complaints to the major and lieutenants were not reduced to writing. Instead, the defendants opposed Mr. Pavey's efforts to obtain discovery of records documenting their investigation of his allegations. Now they offer the unsatisfactory argument that Mr. Pavey's complaints could not have met the exhaustion requirement of § 1997e(a) because, even if he "gain[ed] the attention of people who would have reviewed a grievance" and prompted exactly the same investigation that a grievance would have generated, he still did not put his complaint in writing. R.41 at 5. This contention misses the point. Mr. Pavey's inability to write during the allotted two days was undisputed, as was his declaration that he was locked in his cell for that entire period except when he was receiving medical care or was with the major or

---

[2](...continued)
dismissal of these other claims at the screening stage. Nor do we consider whether Mr. Pavey's argument that he exhausted his excessive-force claim applies to his other claims.

lieutenants complaining about the very events underlying this lawsuit. If there was to be a written grievance, then it had to be written for Mr. Pavey by the officers who interviewed him. He did not have to write it himself; he did not have to review it; and he did not have to sign it. Thus, as Mr. Pavey suggests, there may be a writing that would qualify as a grievance in the documents he demanded but never obtained during discovery, and the defendants have yet to explain why his oral account of the cell extraction, as memorialized by the officers who interviewed him, would not literally satisfy section XIV of Procedure 00-02-301. Having left these questions unresolved, the defendants did not meet their burden of establishing the absence of a material dispute concerning their affirmative defense of failure to exhaust.

Moreover, even if the MCF officers did not produce a grievance on Mr. Pavey's behalf by writing down his account of the cell extraction, there still remains the question whether Mr. Pavey reasonably believed that he had done all that was necessary to comply with Procedure 00-02-301. We have held that inmates may rely on the assurances of prison officials when they are led to believe that satisfactory steps have been taken to exhaust administrative remedies. *See Curtis*, 2005 WL 3728794, at *3. In *Curtis* the defendant jail guards argued that the plaintiff inmate had failed to exhaust his administrative remedies because he hand-delivered a grievance to a jail employee instead of placing it in a lockbox designated for that purpose. In overturning the grant of summary judgment for the defendants, we observed that the defendants had offered no evidence to dispute the inmate's testimony that hand-delivery was an encouraged alternative to use of the lockbox. As we explained, prison officials who "encourage, or even invite, noncompliance with written procedure" cannot then turn around and use the deviation as evidence of a failure to exhaust. *Id.* In reaching this conclusion, we joined other circuits which have held that prison officials will be bound by their oral representations to inmates concerning compliance with the grievance process. *See Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) (stating that information prison officials provided to prisoner about grievance procedures was relevant in deciding whether available administrative remedies had been exhausted); *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (holding that prisoner's noncompliance with written grievance procedures did not constitute a failure to exhaust since prison officials had told him that written procedures were not accurate). Mr. Pavey's situation is similar; even if the MCF officers did not generate what *they* meant to be a grievance that satisfied section XIV of Procedure 00-01-003, they still did not establish that Mr. Pavey, who could not write his own grievance and did not have access to help from his fellow inmates, did not reasonably rely on the assurance that his excessive-force allegations would be investigated.

We make one final observation. Section 1997e(a) may prove to be irrelevant if further development of the record shows that prison officials rendered the

established grievance procedures unavailable to Mr. Pavey by lending him no assistance in creating what would qualify as a written grievance while at the same time isolating him from other inmates who might have assisted him. Mr. Pavey always has insisted--and the defendants never have denied--that he was confined to his cell in pain continuously for several days after his arm was broken except when he was taken for medical treatment or was in the presence of the major or two lieutenants. If so, then he lacked access to other inmates who might have written a grievance for him. We have stated that, when inmates cannot comply with grievance procedure without essential help from prison officials and that assistance is withheld, the failure of the officials to facilitate the grievance process effectively renders administrative remedies unavailable. *See Dale*, 376 F.3d at 656 (vacating grant of summary judgment for defendants on failure-to-exhaust defense where inmate submitted evidence that prison officials failed to respond to his requests for required grievance forms); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (holding that administrative remedies are unavailable if prison officials fail to respond to prisoners' grievances); *see also Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (holding that defendants are "estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures"); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (holding that district court erred in dismissing inmate's complaint for failure to exhaust administrative remedies when court did not address inmate's allegation that prison officials failed to provide necessary grievance forms); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001) (explaining that grievance process "is not an 'available' remedy under § 1997e(a)" if prison officials prevent its use). The defendants, therefore, have not established on this record that Mr. Pavey had an available administrative remedy during the relevant period.

Because the defendants did not establish the absence of material issues of fact concerning the exhaustion question, we conclude that it was error to grant summary judgment in their favor. Accordingly, the judgment is vacated, and the case is remanded for further proceedings on Mr. Pavey's excessive-force claim.

VACATED; REMANDED