In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3406

DARREYLL T. THOMAS,

*Plaintiff-Appellant,*

*v.*

MICHAEL REESE, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 13-cv-597-wmc—**William M. Conley**, *Chief Judge.*

SUBMITTED APRIL 7, 2015[*] — DECIDED JUNE 1, 2015

Before EASTERBROOK, WILLIAMS, and HAMILTON, *Circuit Judges.*

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2)(C).

HAMILTON, *Circuit Judge*. Darreyll Thomas, a Wisconsin prisoner, alleges in this lawsuit under 42 U.S.C. § 1983 that when he was in the Dane County Jail, several county correctional officers unlawfully used excessive force in the course of handcuffing him after he disobeyed an order. The district court granted summary judgment for the defendants on the ground that Thomas had not exhausted his available administrative remedies as required by the Prison Litigation Reform Act. See 42 U.S.C. § 1997e(a). We conclude that administrative remedies were not actually available to Thomas, so we reverse and remand for proceedings on the merits. Our reasoning requires us to consider the relationship between the Dane County Jail's disciplinary procedures and its grievance procedures for complaints by prisoners.

At the time of the incident in 2012, Thomas alleges, he had a severe neck and back injury that, according to prison medical staff, required that he not sleep on a top bunk bed and that he be handcuffed only in front of his body. The day after Thomas was transferred to a jail in Dane County in July 2012, deputy sheriff Michael Reese assigned him to a top bunk. Believing that Reese knew about but ignored his bottom-bunk restriction, Thomas refused the bunk assignment. He then asked to be moved to the segregation unit, which he knew did not have bunk beds. Reese replied by ordering Thomas to place his hands behind his back to be handcuffed. Thomas protested this order, too, thinking that Reese was also ignoring his front-only cuffing restriction.

The conflict then escalated as two other deputy sheriffs, Robin Hampton and Rob Van Norman, came over to assist Reese. Eventually, Thomas alleges, Hampton slammed his face into a wall, and then all three officers shoved him onto

the floor. Thomas alleges that Reese kneed him in the head twice while Hampton and Van Norman forced his hands together behind his back. Reese then kneed Thomas in the head two or three more times and repeatedly punched him in the face, Thomas alleges. Bleeding profusely, Thomas was taken by ambulance to an emergency room to treat his injuries.

Disciplinary proceedings against Thomas followed. Pending his hearing, Thomas was placed in punitive segregation at the jail, where, he alleges, he did not have access to the 50-page inmate handbook he had received just the day before when he was transferred to the jail. The jail charged Thomas with violating several major rules, including those prohibiting physically contacting staff, acting in a disorderly manner, and expelling bodily fluids at another person. Thomas waived a disciplinary hearing and received ten days of segregation as punishment, although he was transferred back to state custody four days after the incident.

About a year later, Thomas sued the officers involved in the incident. Upon screening under 28 U.S.C. § 1915A, the district court dismissed some claims (a ruling that Thomas does not challenge on appeal) and allowed his excessive-force claim and his related claims for failure to intervene, retaliation, and battery to proceed.

The defendants moved to dismiss for failure to exhaust administrative remedies. The district court treated the motion as one for summary judgment and then granted it. The defendants cited a portion of the inmate handbook that provides: "Grievances may not be filed for issues involving major discipline (i.e., disciplinary hearings) because a separate appeal process is available." Because Thomas had waived

his presence at the disciplinary hearing, the defendants argued, he did not exhaust. Thomas responded that no administrative remedies had been available to him. He explained, and the defendants do not dispute, that although he had received the handbook when he arrived at the jail, he did not have it the next day when he was put in segregation and therefore could not consult it. While in segregation, Thomas continued, he had asked three officers to explain the jail's procedure so he could grieve about "how staff beat my ass just because I asked for a bottom bunk." Two gave him no information. The third—whose statement the defendants do not dispute—told Thomas: "You can't file a grievance on that. That's what you're in seg [segregation] for." The district court ruled that Thomas had failed to exhaust.

Under the PLRA, Thomas had to exhaust all available administrative remedies before suing in federal court. See 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). States may specify the precise administrative remedies that their inmates must exhaust, see *King v. McCarty*, 781 F.3d 889, 894 (7th Cir. 2015), and Wisconsin allows county facilities to define the grievance procedures for their jails, Wis. Admin. Code DOC § 350.26. But the PLRA "requires exhaustion only of remedies that are 'available.' Prison authorities cannot immunize themselves from suit by establishing procedures that in practice are not available because they are impossible to comply with or simply do not exist." *King*, 781 F.3d at 893. Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that Thomas failed to pursue it. See *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

We conclude for two independent reasons that Thomas did not have an available administrative remedy. First, we must assume that after Thomas was confined to segregation, he did not have access to the handbook, which according to the defendants sets forth the proper grievance procedure. The parties agree that he had the 50-page handbook before the incident for less than one day, but the Prison Litigation Reform Act imposed no duty on Thomas to memorize it during that time. Then when Thomas, lacking the handbook, asked three officers how he could file a grievance, only one answered. He told Thomas that he *could not* file a grievance. "[W]hen prison officials prevent inmates from using the administrative process … the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); see also *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (remedy is unavailable when prison employees "use affirmative misconduct to prevent a prisoner from exhausting"); *Dale v. Lippin*, 376 F.3d 652, 656 (7th Cir. 2004) (remedy is unavailable when officials refuse to give prisoner the form required to file grievance).

Second, the handbook itself shows that Thomas did not have an administrative remedy available. Thomas was charged with "major" rule violations. The handbook instructs: "Grievances may *not* be filed for issues involving major discipline (i.e., disciplinary hearings) because a separate appeal process is available" (Emphasis added.) Presumably this rule allows (and requires) Thomas to grieve at his disciplinary hearing any dispute about the charges or the proposed discipline. But Thomas is not contesting his discipline or the conduct that generated the charges. Rather, he is challenging the officers' conduct that occurred *after* his offenses.

The defendants essentially want to revise the handbook to add a "compulsory counterclaim" rule comparable to Federal Rule of Civil Procedure 13(a). Defendants argue that when the jail considers disciplining an inmate for misconduct, the inmate not only can but *must* raise against jail guards any grievances about their reaction to the misconduct. But neither the handbook nor Thomas's signed waiver of his hearing says this. The defendants "cannot defeat the suit by retroactively amending" the handbook. *King*, 781 F.3d at 896. Prison officials may not "change their grievance rules once litigation beg[ins] or simply keep prisoners in the dark about the real rules." *Id.* Likewise, Thomas did not need to exhaust remedies he had not been told about, nor did he need to divine the availability of other procedures. *Id.*[1]

The nature of the jail's disciplinary process reinforces our view that Thomas could not raise his grievance about the jail guards at his disciplinary hearing. The handbook says: "The purpose of inmate discipline is to correct inappropriate behavior and to aid inmates in their attempt to comply with jail rules and regulations." At the hearing, the handbook cautions, inmates may only "dispute the alleged violations." Restricting inmates to disputing only the "alleged violations" implements Wisconsin's rule that inmates may pre-

---

[1] Defendants have not argued that the issues Thomas raises were so distinct from the disciplinary proceeding that he should have raised them in a separate grievance. Such an argument would be inconsistent with their actual argument that Thomas should have raised them in the disciplinary proceeding. If jail or prison authorities intend to allow for such grievances of distinct issues, we would expect that option to be spelled out in the relevant information given to inmates.

sent only "relevant evidence" at disciplinary hearings. See Wis. Admin. Code DOC §§ 303.87(2)(a), 350.24(3)(d)(2). Wisconsin defines that term as "evidence [that] makes it appear more likely or less likely that the inmate committed the offense of which the inmate is accused." *Id*. § 303.87(1).

But Thomas's evidence for his claim that the officers used excessive force after he broke prison rules would not make his denial that he broke those rules appear more likely true or not. Cf. *Gilbert v. Cook*, 512 F.3d 899, 901–02 (7th Cir. 2008) (disciplinary finding that inmate violated prison rule is not inconsistent with inmate's claim that guards used excessive force in responding to the violation). We therefore conclude that administrative remedies were not actually available to Thomas. See *Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). The case should proceed to the merits to determine if his allegations are true.

We end with one final point. Thomas protests the district judge's denial of his motion for recusal, but we reject this challenge. Thomas asserts without any support that the judge had "personal knowledge of disputed evidentiary facts." 28 U.S.C. § 455(b)(1). When a judge decides a contested issue, whether correctly or not, at least one side will be disappointed. Adverse rulings do not constitute evidence of judicial bias. See *Liteky v. United States*, 510 U.S. 540, 555 (1994); *Williams v. Illinois*, 737 F.3d 473, 476 (7th Cir. 2013).

We REVERSE the district court's judgment and REMAND the case for further proceedings.