┌─────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 19, 2020[*]
Decided May 20, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-3523

| | |
|---|---|
| PAUL M. NIGL, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 19-cv-105-bbc |
| | |
| MICHAEL MEISNER, et al., | Barbara B. Crabb, |
| *Defendants-Appellees*. | *Judge*. |

## O R D E R

After waiving the right to challenge two conduct reports about his attempts to contact a former prison employee, Paul Nigl, a Wisconsin inmate, sued prison officials, arguing that the corresponding discipline violated his right to an "intimate association" with her. Because the district court correctly concluded that Nigl failed to exhaust his administrative remedies, we affirm the entry of summary judgment for the defendants.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Nigl received the two conduct reports at Redgranite Correctional Institution, both arising from his pursuit of a relationship with a former prison employee, Sandra Johnston. A unit supervisor issued the first report in November 2015, charging that Nigl had improperly "solicit[ed]" the supervisor for "special consideration" to see Johnston as a visitor. *See* WIS. ADMIN. CODE DOC § 303.30 (2015) (Wisconsin amended its administrative code on April 1, 2018; all references are to the version in effect during these events). The report called for 30 days' segregation. Nigl could have contested the report at a hearing, after which a hearing officer "shall … [c]onsider any of the inmate's defenses or other mitigating factors." *Id.* § 303.80(6)(f). But Nigl checked the boxes "I ADMIT I AM GUILTY" and "I WAIVE MY RIGHT TO A CONTESTED DISCIPLINARY HEARING." *Id.* §§ 303.78, 303.80(2). Before Nigl signed the waiver, an officer told him that by signing it, the only challenge that he could later raise would be about the "procedure" used to impose the discipline. Later that day, Nigl asked the warden for a discretionary "warden-initiated review." *See id.* §§ 303.73(13), 303.89. He denied soliciting the unit supervisor and explained that he had "merely requested" that she perform her duty to review his request for a visitor. The warden declined to exercise his discretion to review the disposition of the conduct report.

The second conduct report came the next month. A captain at the prison alleged that Nigl "attempt[ed] to solicit a relationship" with Johnston "without her permission" by obtaining her address and phone number. *See* WIS. ADMIN. CODE DOC §§ 303.19, 303.30(6). Nigl again admitted guilt of the conduct in the report, waived his hearing rights, and accepted as punishment 60 days of disciplinary segregation. On the day that he signed his waiver, he submitted an inmate complaint challenging the disciplinary procedure, arguing that the same prison officer both wrote and adjudicated the report. (He repeated this charge in two letters to the warden and a second complaint.) An examiner rejected Nigl's complaint because an impartial party had also reviewed the conduct report. Nigl appealed to no avail, both within the prison and to the Wisconsin Department of Corrections nearly a year later, when he asked that it remove the two reports from his disciplinary record.

Two years after receiving these reports, in December 2017, Nigl submitted a new inmate complaint. This time, he argued that the two conduct reports were false and issued in retaliation for exercising his constitutional right to intimate association. An examiner rejected the complaint as untimely, and Nigl unsuccessfully appealed to the warden. After his transfer to another prison in 2018, Nigl again sought a warden-initiated review of the two conduct reports, alleging retaliation. The warden refused,

noting that warden-initiated review was not an alternative form of administrative appeal and that Nigl had waived his right to challenge the conduct reports.

Nigl then brought this suit under 42 U.S.C. § 1983, maintaining that the conduct reports were retaliation for exercising his constitutional right to pursue an intimate association with Johnston. The district court granted the defendants' motion for summary judgment, ruling that Nigl had failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a). The court determined that if Nigl believed the reports "were false and unjustified and issued in retaliation," then in order to exhaust he had to timely challenge them through the disciplinary appeal process. But Nigl failed to do so because he waived his rights to contested disciplinary hearings in 2015, and furthermore, his 2017 complaint was untimely.

On appeal, Nigl does not dispute that he admitted guilt and waived his rights to contest the conduct reports; instead, he argues that, even though he waived those rights, he nonetheless exhausted all available remedies. First, he contends that the officer who delivered his initial conduct report misled him by telling him he could not contest the discipline, when in fact he could. It is true that misinformation or assurances that an inmate need not comply with a requirement can mean that remedies are not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016); *Swisher v. Porter Cty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014). But that is not what happened here. The officer who delivered the first report to Nigl gave him accurate information: he explained that if Nigl waived his right to a contested hearing, he would lose his right to challenge the discipline except on procedural grounds. That is a correct statement of the rules. An inmate "may not appeal an uncontested" disposition to which he has agreed, WIS. ADMIN. CODE DOC § 303.78(5), except he may "challenge only the procedure used in the … disciplinary process." *Id.* § 310.08(3). So Nigl was not misled into bypassing administrative relief.

We recognize that Nigl may have had affirmative defenses to the charges (i.e., even if he committed the charged acts, he should not be punished because the reports were retaliation for his intimate relationship, or the relationship was constitutionally protected). But in order to exhaust, he had to raise those defenses at a hearing. For the prison's rules provide that a hearing officer "shall … [c]onsider *any* of the inmate's defenses or other mitigating factors." WIS. ADMIN. CODE DOC § 303.80(6)(f) (emphasis added). In *Thomas v. Reese*, 787 F.3d 845, 848 (7th Cir. 2015), we commented on the same "process" for discipline that "allows (and requires) [an inmate] to grieve at his disciplinary hearing any dispute about the charges or the proposed discipline." Only if

the inmate's complaint is *not* about the discipline itself may a prisoner excusably not raise that complaint at the disciplinary hearing. *Id.* But because Nigl's defenses are "related" to his conduct reports, he had to use the disciplinary process. *See* WIS. ADMIN. CODE DOC § 310.08(2)(a).

Nigl's next argument is that his signed waiver prevented him from seeking an administrative appeal, so exhaustion is excused. His premise is correct, but not his conclusion. He chose to abandon available administrative remedies as a result of his decision to admit guilt and waive his rights. To exhaust, prisoners must properly pursue each step in the administrative relief process—a process that his voluntarily signed waiver prematurely ended. *See Woodford v. Ngo*, 548 U.S. 81, 90, 95 (2006); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (when a prisoner does not follow procedures his remedies are forfeited not unavailable); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023–24 (7th Cir. 2002) ("Any other approach would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective [of § 1997e].").

Finally, Nigl argues that the district court erred in concluding that his requests for a warden-initiated review and his later inmate complaint in 2017 were ineffective to exhaust. To begin with, Nigl cannot rely on his requests for discretionary, warden-initiated review to show exhaustion. As we already explained, prisoners must adhere to the required procedural rules to satisfy § 1997e. Discretionary alternatives for relief are not a substitute for the required process of exhaustion. *See Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011). Second, the later inmate complaint was ineffective because it contested the substantive validity of the charges, and Nigl had waived such a challenge. In any event, Nigl waited too long to bring the 2017 complaint. He had 14 days from the date of the occurrence to file a complaint, WIS. ADMIN. CODE DOC § 310.09(6), but did not file the complaint until years later. Nigl replies that this deadline should be relaxed because he has suffered "ongoing retaliatory punishment." But his federal complaint challenged only two discrete reports from 2015, not ongoing issues.

We have considered Nigl's other arguments, and none has merit.

AFFIRMED