In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2422

COREY CROUCH,

*Plaintiff-Appellant,*

*v.*

RICHARD BROWN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:20-cv-00159 — **James P. Hanlon**, *Judge.*

ARGUED JANUARY 20, 2022 — DECIDED MARCH 10, 2022

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before filing a federal claim about prison conditions. Corey Crouch was held in solitary confinement for nearly four years. He challenges his placement there, claiming it was not meaningfully reviewed. During his time in solitary confinement, Crouch received numerous classification and status reports which he did not appeal. Because he failed to exhaust

his available administrative remedies, we affirm the district court's grant of summary judgment to the defendants.

## I

The Indiana Department of Correction places offenders in restrictive status housing when their continued presence in the general population would pose a serious threat to life, property, and others, or the security and orderly operation of a correctional facility.[1] *See* IND. CODE § 11-10-1-7(a). The Department uses several classifications for its restrictive housing units, such as "disciplinary" and "administrative." "Disciplinary" restrictive status housing, for example, is typically imposed as a sanction for a conduct violation. "Administrative" restrictive housing, on the other hand, is used to isolate an offender who poses a threat to life, property, self, staff, other offenders, or facility security.

Corey Crouch has been an inmate in the Department's custody for about a decade. In February 2016, the Department assigned Crouch to disciplinary restrictive status housing due to violations of the disciplinary code. Four months later, it transferred Crouch to department-wide restrictive housing.[2] Then, after a little more than a year, the Department reclassified Crouch to administrative department-wide restrictive

---

[1] This general background on the Department's restrictive-housing classifications is drawn from the June 1, 2015, version of the Indiana Department of Correction Manual of Policies and Procedures, Policy No. 02-04-101 ("The Disciplinary Code for Adult Offenders"), as well as the Declaration of Matt Leohr, a classification specialist, at ECF No. 19-6.

[2] According to a more recent version of the Department's Policy No. 02-01-111 ("Administrative Restrictive Status Housing"), a restrictive housing unit may be operated at either the facility level or on a Department-wide basis.

housing, where he remained until December 2019, when he was finally reclassified to the general population. This meant that in total, Crouch spent slightly less than four years—February 2016 to December 2019—in solitary confinement.

Throughout this period, Crouch received dozens of classification and status reports. There were two types: (1) a "Report of Classification Hearing" ("ROCH"), and (2) a monthly "Department Administrative Restrictive Status Housing Review" ("30-day review").

### A. The Report of Classification Hearing

The ROCH begins as a generic form used for weekly reviews of new transfers, 90-day reviews, and annual reviews. Each form includes a section for a caseworker to recommend whether the inmate should remain in his or her current status. Then the supervisor of classification reviews the recommendation and either approves or denies. This process is governed by the Department's Adult Offender Classification Policy (the "Classification Policy"). Under that policy, classification decisions can be appealed through separate procedures based on whether the decision is intra-facility or inter-facility.

In general, ROCHs are completed more frequently after a change in an inmate's status. For example, Crouch received a ROCH roughly once a week for the eight weeks following his transfer to administrative department-wide restrictive housing in August 2017. After that period, Crouch received only four ROCHs over the next two years. During his nearly four years in solitary confinement, Crouch received at least 35 ROCHs, most of which concerned changes in his classification or status. Crouch did not appeal any of these reports,

although before entering solitary confinement he was aware of the process to appeal a ROCH and he had previously done so.[3]

## B. The 30-Day Review

The 30-day review is a written status report mandated by Indiana law. *See* IND. CODE § 11-10-1-7(b) ("The department shall review an offender so segregated at least once every thirty (30) days to determine whether the reason for segregation still exists."). In November 2017, Crouch began receiving these monthly reviews, which did not reference the appeal process. It was unclear whether such a review could be appealed.[4] Then in February 2019, the Department added language to each 30-day review explaining that process: "Placement on Department-Wide Administrative Status Housing may be appealed by submitting a Classification Appeal (SF 9260) within ten working days of admission to a Department-Wide Restrictive Status Housing Unit or any subsequent Classification action (i.e. 30 Day or 90 Day reviews)."[5]

Between November 2017 and May 2019, Crouch received at least twenty-one 30-day reviews. Crouch did not appeal any of these reviews, either before or after the addition of the new language.

---

[3] Oral Argument at 4:59.

[4] Oral Argument at 10:51.

[5] In addition to the ROCH and the 30-day review, inmates also may raise concerns through an offender grievance process or a disciplinary appeal process. These processes are explained to inmates during orientation and copies of the Department's polices are available at the facilities' law libraries.

**II**

On March 22, 2020, Crouch sued Department employees under 42 U.S.C. § 1983, alleging, among other things, violation of his Due Process rights because of his "prolonged placement in solitary confinement" which "did not receive meaningful review." The defendants then moved for summary judgment, arguing Crouch failed to exhaust his administrative remedies. The district court granted the motion on exhaustion grounds, citing Crouch's failure to appeal any of the ROCHs or 30-day reviews. The court dismissed the suit without prejudice, and Crouch appealed.

Ordinarily, "a dismissal without prejudice is not a final order for purposes of appellate jurisdiction under 28 U.S.C. § 1291." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016) (quoting *Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006)). If there is no final order, we lack jurisdiction to resolve the case. But when "an amendment would be unavailing, then the case is dead in the district court and may proceed to the next tier." *Kaba*, 458 F.3d at 680 (quoting *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003)). Here, the "dismissal without prejudice for failure to exhaust is effectively a final order because no amendment could resolve the problem." *Id.* Crouch's claim was dismissed for failure to exhaust administrative remedies and the deadline to exhaust has long since passed. *See id.* We may therefore consider the merits of Crouch's appeal.

A district court's grant of summary judgment is reviewed de novo. *Moss v. United Airlines, Inc.*, 20 F.4th 375, 380 (7th Cir. 2021); *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005) ("We review the application of [42 U.S.C.] § 1997e(a) *de novo*."). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Crouch appeals only the dismissal of his claim that he endured prolonged solitary confinement because of a lack of meaningful review. So, we must determine whether the district court erred when it granted summary judgment for failure to exhaust administrative remedies.

**A**

We begin by considering the relevant legal framework. The PLRA requires prisoners to exhaust administrative remedies before filing a federal claim about prison conditions. That Act states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

"[F]ailure to exhaust is an affirmative defense that a defendant must establish by competent evidence." *Curtis*, 436 F.3d at 711 (citations omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006); *see also Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) (citations omitted) ("In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system."). Indeed, an inmate "must now exhaust

administrative remedies even where the relief sought … cannot be granted by the administrative process." *Woodford*, 548 U.S. at 85 (citation omitted).

While an inmate must first exhaust available remedies, they "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An "available" remedy is one that is "capable of use for the accomplishment of a purpose" and "is accessible or may be obtained." *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 737–38 (2001)). An administrative remedy is "unavailable" if it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," when the "administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. Defendants bear the burden of proving "that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) (citations omitted). For decades, this court "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Within this legal framework, the parties cite various circuit precedents to support their arguments. First, in *Dole*, this court considered an inmate's § 1983 claim, alleging "he was beaten by prison guards in retaliation for punching an assistant warden." *Id.* at 805. As required by Illinois regulations, the inmate tried to file a grievance with the Administrative Review Board by giving prison authorities an addressed envelope to mail. *Id.* But by the time the inmate learned the Board had not received his grievance, it was already too late

to re-file. *Id.* The district court granted summary judgment for the prison guards, concluding the inmate failed to exhaust under § 1997e(a). *Id.* On appeal, this court held that "[b]ecause [the inmate] properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that [he] failed to exhaust his remedies." *Id.* at 811. Further, "[i]n this limited context, prison authorities may not employ their own mistake to shield them from possible liability." *Id.* In other words, a prison official "may not take unfair advantage of the exhaustion requirement, … and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* at 809 (citation omitted). An inmate therefore exhausts his administrative remedies if he takes "all steps necessary to exhaust one line of administrative review," and does "not receive instructions on how to proceed once his attempts … [are] foiled." *Id.* at 813.

Second, in *Kaba v. Stepp*, the court considered an Illinois inmate's claim that administrative remedies were unavailable because his case manager "denied him grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances." 458 F.3d at 679–80. The inmate also claimed that "other named officials knew about and did nothing to stop [the case manager's] activities until after [the inmate] was actually beaten in his cell." *Id.* at 680. Once again, the district court granted summary judgment for the prison guards on exhaustion grounds. *Id.* On appeal, this court reversed the district court, holding that the prison officials failed to meet "their burden of proving the availability of administrative remedies." *Id.* at 686. The court noted that it was "unclear based on the evidence" whether the inmate

could "avail himself" of the formal remedy process, even though the court did not doubt that such a process existed. *Id.*

Finally, in *Curtis v. Timberlake*, this court considered a former pretrial detainee's claim that he was assaulted by two guards at an Illinois jail. 436 F.3d at 710. The applicable remedial procedure required grievances be placed in a designated lockbox for collection by a social worker. *Id.* In practice, though, the social worker would also accept hand-delivered grievances. *Id.* at 711. The detainee used this informal procedure to submit his grievance by hand. *Id.* Nevertheless, the district court granted summary judgment for the prison officials, holding the detainee failed to exhaust under § 1997e(a). *Id.* On appeal, this court vacated the district court's decision, stating that it was a disputed issue of fact whether the prisoner submitted a grievance "in the place required" by the "administrative rules." *Id.* at 711–12. The court then reiterated that administrative-exhaustion rules are not exclusively "those reduced to *writing*." *Id.* at 712 (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

These cases establish that a prisoner must exhaust his or her administrative remedies before filing a federal claim about prison conditions. The rules for administrative remedies may include both written policies and informal procedures. Importantly, though, prison officials and staff may not take unfair advantage of the exhaustion requirement or make a remedy unavailable by failing to respond properly or through affirmative misconduct.

**B**

Under these authorities we conclude that Crouch failed to exhaust his administrative remedies. Throughout his solitary

confinement, Crouch had at least 56 opportunities to appeal a report or review, but he never did.

Crouch could have appealed any one of the 35 ROCHs he received. Before the district court, Crouch attested that he had in fact "appealed" a ROCH dated May 21, 2018. The district court rejected this argument, finding there was no "designated evidence … creat[ing] a genuine factual dispute to defeat summary judgment" because Crouch's assertion was "vague and not specific." Even accepting Crouch's testimony as true, the court found that no reasonable trier of fact could conclude that Crouch appealed the "ROCH by submitting the proper form to the proper official by the applicable deadline." On appeal, Crouch cites no record evidence to rebut the district court's conclusion. In fact, Crouch concedes he could have appealed any of the four ROCHs issued between October 2017 and September 2019. There is no evidence that Crouch appealed a ROCH through the available administrative process.

Crouch also could have appealed one of the twenty-one 30-day reviews he received. At least six of these reviews contained new language explaining how inmates could appeal the reviews within 10 working days. Regardless, at any point Crouch could have attached relevant copies of his 30-day reviews to a ROCH to support his claims. This, too, is a sufficient basis on which to determine that Crouch failed to exhaust his administrative remedies under the PLRA.

The added language is irrelevant, Crouch responds, because it was not accompanied by a change in the Department's Classification Policy. That policy stated inmates could appeal classification "decisions," but did not specifically mention "reviews" or "recommendations" as part of the process.

In other words, Crouch claims the additional language on the 30-day reviews was meaningless. According to Crouch, encouraging inmates to appeal their 30-day reviews without a policy change was "akin to affirmative misconduct."

Defendants argue Crouch forfeited this argument by failing to raise it before the district court. *See Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019) (citation omitted) ("A party generally forfeits issues and arguments raised for the first time on appeal."). We need not address the issue of forfeiture here, though, because Crouch's argument is without merit. Crouch has provided no evidence of "affirmative misconduct" by prison officials, and we find no conflict between the Classification Policy and the appellate language added to the 30-day reviews. He has offered no evidence of misrepresentation by prison staff or the Department refusing to consider appeals from 30-day reviews.

* * *

Crouch could have pursued administrative remedies by appealing a ROCH or a 30-day review, but he failed to do so. Accordingly, we AFFIRM the district court's judgment.