NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 17, 2022[*]
Decided November 21, 2022

**Before**

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

JOHN Z. LEE, *Circuit Judge*

No. 22-1443

| | |
|---|---|
| MATTHEW RICHARD, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| *v.* | No. 20-CV-876 |
| WILLIAM SWIEKATOWSKI and ANDREW WICKMAN, | William E. Duffin, |
| *Defendants-Appellees.* | *Magistrate Judge.* |

**O R D E R**

Matthew Richard, a Wisconsin prisoner, sued officials and correctional officers at the Green Bay Correctional Institution, claiming that they violated his constitutional rights by punishing him for writing letters. *See* 42 U.S.C. § 1983. After dismissing some of his claims at the screening stage, *see* 28 U.S.C. § 1915A, the district court entered

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

summary judgment for the defendants on the remaining claims. It concluded that Richard lacked sufficient evidence that correctional officers acted with retaliatory motives in violation of the First Amendment when imposing discipline for the two letters or that Richard's disciplinary hearing was procedurally unfair. We affirm.

We construe the undisputed facts in the light most favorable to the plaintiff and draw all reasonable inferences in his favor. *Douglas v. Reeves*, 964 F.3d 643, 645 (7th Cir. 2020). At Waupun Correctional Institution, where he was housed before his transfer to Green Bay in 2015, Richard was sanctioned for involvement with the Almighty Vice Lord Nation, but he asserts that he left the gang in 2012. In the first letter at issue, addressed to fellow Green Bay prisoner Frederick Jones in September 2018, Richard congratulated Jones on his impending release and promised to connect Jones with Kamallah Brelove, someone outside the prison. Richard then wrote to Brelove, his friend. In this letter, Richard encouraged Brelove to contact Jones and requested Brelove's help contacting two other "brothers" about a "revenue stream" that he and these men were "trying to tap into." Richard signed both letters, "Mateen Wasi El-Shabazz."

Green Bay's Security Threat Group Coordinator, William Swiekatowski, reviewed the letters and issued a conduct report to Richard. Swiekatowski consulted various sources, including a scholarly article, prison databases, and officials at Waupun. He concluded that Richard, Brelove, Jones, and the two other men named in Richard's letters were members of the Vice Lords gang. Swiekatowski also considered an earlier letter written by Michael Johnson, another Green Bay prisoner, that laid out plans to start businesses to support the Vice Lords. Johnson had written about meeting with Mateen Wasi-El Shabazz—Richard, Swiekatowski believed—and discussing business plans and communications channels. Swiekatowski concluded that Richard's letters evinced his involvement in gang activity and in business, both of which violated prison regulations. *See* WIS. ADMIN. CODE DOC §§ 303.24, 303.36 (2018).

Richard responded to the charges by denying any gang involvement and arguing that he was merely communicating with old friends; he maintained that Swiekatowski took his letters out of context. Richard was found guilty at his first disciplinary hearing, but he successfully appealed because he had not been afforded sufficient opportunity to present evidence. After a second hearing, Andrew Wickman, the hearing officer, found Richard guilty of both charges, and the warden affirmed.

Richard then sued Swiekatowski, Wickman, and four prison officials. The magistrate judge, presiding with consent from all parties, 28 U.S.C. § 636(c), screened the complaint and permitted Richard to proceed with a First Amendment retaliation claim against Swiekatowski and a due-process claim against Wickman for denying him access to evidence (a gang-member database) at the second hearing. The court dismissed Richard's claims against the remaining officials because he did not plausibly allege their personal participation in the events or their involvement in a conspiracy with the other defendants. Swiekatowski and Wickman later moved for summary judgment. The district court granted the motion, concluding that Richard lacked evidence that Swiekatowski issued the conduct report to retaliate against Richard or that Wickman deprived him of due process. Richard appeals.

We review the decisions entering summary judgment and screening the complaint de novo. *Crouch v. Brown*, 27 F.4th 1315, 1319 (7th Cir. 2022); *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020).

In challenging the summary-judgment ruling, Richard first contends that Swiekatowski violated his rights under the First Amendment by punishing him for writing letters to friends. To bring his case to trial, Richard needed evidence that his protected speech was a motivating factor in Swiekatowski's decision to take a retaliatory action against him. *Douglas*, 964 F.3d at 646. Assuming the letters were protected speech, Richard has not mustered sufficient evidence of retaliatory motive to raise a disputed question of fact. Swiekatowski submitted evidence that he would have issued the conduct report irrespective of any protected speech. *See Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). He attested that he wrote up Richard because he believed "the letters were communications to gang members plotting ways to raise money and start businesses for the Vice Lords." Richard suggests that the timing of the conduct report—just days before Richard's administrative segregation status was up for a regularly scheduled review—is suspect. He infers that Swiekatowski's true motive was to keep him in segregation, and that Swiekatowski misinterpreted the letters as a pretext. Swiekatowski maintains that he issued the conduct report to prevent gang activity and ensure the safety of the prison.

This is a disagreement, but it is not a genuine dispute of material fact. Even if Swiekatowski was wrong about what the letters meant, there is no evidence that he issued the conduct report to punish Richard for communicating with his friends. The timing of the conduct report relative to Richard's regularly scheduled administrative review is not relevant to the question of whether there is a causal connection between

the report and the letters. *See Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020) (explaining that causation requires a showing that the fact of plaintiff's protected activity, not the substance, motivated the alleged adverse action). Thus, the First Amendment claim fails because Richard has no evidence to dispute Swiekatowski's account of his non-retaliatory reason for issuing the conduct report.

Richard adds that having Johnson's letter, which Richard did not author or receive, used as evidence against him also infringed his free speech rights. Richard fails to explain, however, how the introduction of Johnson's letter as evidence at his hearing curtailed his own First Amendment rights, much less how it trumps the prison officials' legitimate penological interests in monitoring prisoners' nonlegal mail to promote safety. *See Van den Bosch v. Raemisch*, 658 F.3d 778, 791 (7th Cir. 2011). Neither Richard's constitutional rights nor prison regulations, *see* WIS. ADMIN. CODE DOC § 303.87(2), prohibited the introduction of this relevant evidence at Richard's disciplinary hearing.

The district court also properly entered summary judgment against Richard on his procedural due-process claim. Richard asserts that Swiekatowski fabricated information about the purported gang activity of Richard's associates in the conduct report, and Wickman knowingly used that information to find him guilty at the disciplinary hearing. But Richard did not submit any evidence to back up his accusation that anything in the report was untrue, let alone fabricated. Because Swiekatowski submitted "some" evidence—Richard's letters and corroborating evidence of gang activity—to the hearing officer before discipline was imposed, Richard's due-process rights were protected. *See Superintendent v. Hill*, 472 U.S. 445, 447 (1985); *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999).

Richard also appeals the decision to dismiss his civil conspiracy claim at screening, repeating his allegations that various prison officials "turned a blind eye" to Swiekatowski's issuance of the conduct report. But Richard has not shown how these officials—John Kind, William Pollard, Dylon Radtke, and Steven Schueler—were personally involved. Some of these officials participated in various stages of the disciplinary process after Swiekatowski issued the conduct report, but that would not make them responsible (whether as supervisors or as administrative reviewers) for misconduct, such as retaliation, by Swiekatowski. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). And Richard did not overcome this problem with his conclusory assertion of a conspiracy. To state such a claim, he needed to allege facts plausibly suggesting an agreement among the defendants to achieve a common purpose of violating his rights. *See Redd v. Nolan*,

663 F.3d 287, 292 (7th Cir. 2011); *N. Highland Inc. v. Jefferson Mach. & Tool Inc.*, 898 N.W.2d 741, 747 (Wis. 2017). Nothing in the complaint makes such coordination plausible; therefore, the magistrate judge properly dismissed the conspiracy claim.

We have considered Richard's remaining arguments, and none has merit.

AFFIRMED